Filed:  January 14, 2005

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 04-4091
(CR-03-175)

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

LUIS PEREZ,

Defendant - Appellee.

O R D E R

The court amends its opinion filed December 29, 2004, as follows:

On page 1, the third line of the district court information is amended by substituting "Joseph R. Goodwin" for "Charles H. Haden II" immediately before "District Judge."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

LUIS PEREZ,

*Defendant-Appellee.*

No. 04-4091

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph R. Goodwin, District Judge.
(CR-03-175)

Argued: October 1, 2004

Decided: December 29, 2004

Before WILKINS, Chief Judge, TRAXLER, Circuit Judge, and
Roger W. TITUS, United States District Judge for the
District of Maryland, sitting by designation.

Reversed by published opinion. Judge Traxler wrote the opinion, in
which Chief Judge Wilkins and Judge Titus joined.

## COUNSEL

**ARGUED:** Joshua Clarke Hanks, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West
Virginia, for Appellant. David Robert Bungard, Assistant Federal
Public Defender, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Charleston, West Virginia, for Appellee. **ON BRIEF:**

Kasey Warner, United States Attorney, Charleston, West Virginia, for Appellant. Mary Lou Newberger, Federal Public Defender, Charleston, West Virginia, for Appellee.

## OPINION

TRAXLER, Circuit Judge:

Luis Perez was charged in a four-count indictment with narcotics and firearms offenses after law enforcement officers searched his home pursuant to an informant's tip. Perez filed a pretrial motion to suppress the evidence recovered in the search and his confession to the officers executing the search warrant. The district court granted Perez's motion to suppress, holding that the warrant was not supported by probable cause and was thus invalid and that the good faith exception to the warrant requirement did not apply. The government appeals, and we reverse.

## I.

On July 11, 2002, Deputy Kevin Unger, an officer employed by the Roane County, West Virginia, Sheriff's Department, was approached by Timothy Taylor while Unger was investigating a reported breaking and entering at the home of Taylor's parents. At Taylor's request, Unger spoke with him in private. Taylor revealed that ongoing drug-related activities had been occurring at the residence of Sarah Parkinson and Perez, who was Parkinson's boyfriend, on Mount Hope Road in Roane County. Taylor occasionally visited Parkinson's home because Parkinson was the mother of his girlfriend. Taylor told Unger that he witnessed Parkinson and Perez possessing and using large quantities of marijuana on several occasions. Unger spoke with Taylor for approximately 30 minutes and reduced the substance of their conversation to the following written statement, which was signed by Taylor and included his post-office box, date of birth, and social security number:

> Myself and Stephanie Workman were living in the old school house on Mt. Hope. Sarah Parkinson McGlothlin,

Stephanie's mom, rented it to us. Sarah's house is the two story white house on the same driveway as Rick Moores. Louis Perez lives there and her other daughter stays there. While at her house I've seen big bags of marijuana on several occasions. They have also smoked it around me on several occasions. I don't want my girlfriend around this. I also would like my name to be confidential and anonymous.

I have read this statement and find it to be true and correct.

J.A. 17. The signed statement was dated July 11, 2002.

The next day, Unger prepared an affidavit to be submitted with his application for a search warrant, which recounted his conversation with Taylor: "This officer took a statement from a reliable and credible witness that stated on several occasions [he had] been to the residence [of Perez and Parkinson]. While there, [he] noticed several bags of marijuana and observed [Perez and Parkinson] smoking marijuana on several occasions at the above residence." J.A. 18.

Unger presented to the magistrate his affidavit and the statement signed by Taylor. Additionally, Unger told the magistrate that Taylor indicated he had observed this marijuana use within a few days of their July 11 conversation. Prior to submitting the application for a search warrant, Unger learned from Senior Trooper Doug Starcher, who was familiar with Perez, that Perez had been convicted of distributing cocaine in 1995; however, there is no record evidence that Unger passed this information along to the magistrate. The magistrate issued the search warrant, pursuant to which Unger, Starcher, and other officers recovered marijuana, cocaine, drug paraphernalia, and firearms from the Mt. Hope residence identified by Taylor. Perez acknowledged responsibility for these items in response to questions from law enforcement officers.

Perez was indicted for possession with intent to distribute marijuana, possession with intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking offense, and possession of a firearm by a felon. Perez moved to suppress the items yielded by

the search as well as his confession. The district court granted the motion.

First, the district court determined that the search warrant was not supported by probable cause and was therefore invalid. The district court based this conclusion on its belief that "Unger lacked information concerning Taylor's veracity or reliability" and "completely failed to corroborate any of the information provided by Taylor." J.A. 90. "[B]ecause Taylor's allegations of criminal misconduct provided the sole support for the issuance of the warrant," J.A. 89, the district court reasoned that the magistrate judge "lacked a substantial basis to believe the known facts and circumstances were sufficient" to establish probable cause that "evidence of a crime would be found at Parkinson's home." J.A. 94.

Second, the district court considered whether, even if the search had been illegal, the evidence was admissible under the good faith exception to the exclusionary rule carved out in *United States v. Leon*, 468 U.S. 897 (1984). In concluding that the *Leon* good faith exception was not applicable, the district court reasoned that the "issuing judicial officer acted as a rubber stamp" for the "'bare bones' affidavit" submitted by Unger, and that "[a] reasonably well[-]trained officer would have known the search was illegal, despite the Magistrate Judge's authorization." J.A. 96. Thus, the district court suppressed the evidence recovered from Perez's residence, and it determined that Perez's confession could not be used because "[t]he questions posed to [Perez] by law enforcement would not have been asked without the presence of the illegally seized contraband." J.A. 98.

The government immediately appealed this ruling.

II.

Assuming without deciding that the district court correctly concluded the search warrant was invalid for lack of probable cause, we exercise our discretion to proceed directly to the question of good faith. *See Leon*, 468 U.S. at 925; *United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994).

The "search of private property without proper consent" violates the Fourth Amendment's prohibition against unreasonable searches "unless it has been authorized by a valid search warrant" or it falls within "certain carefully defined classes of cases" that permit warrantless searches. *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528-29 (1967) (internal quotation marks omitted). Evidence obtained in violation of the Fourth Amendment, of course, is generally subject to suppression under the exclusionary rule. *See United States v. Calandra*, 414 U.S. 338, 347 (1974) ("[E]vidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The "prime purpose" of the judicially created exclusionary rule is "to deter future unlawful police conduct," *Calandra*, 414 U.S. at 347; however, "the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 348.

"*Leon* teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (Motz, J.) (quoting *Leon*, 468 at 922 n.23). The Court explained in *Leon* that the deterrence purpose of the exclusionary rule is not achieved through the suppression of evidence obtained by "an officer acting with objective good faith" within the scope of a search warrant issued by a magistrate. 468 U.S. at 920. Hence, under *Leon*'s good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was "objectively reasonable." *Id.* at 922.

Usually, searches conducted "pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.* (internal quotation marks omitted). *Leon*, however, identifies four circumstances in which an officer's reliance on a warrant would not qualify as "objectively reasonable": (1) when the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";

(2) when "the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)"; (3) when "an affidavit [is] so lacking in indicia of proba-ble cause as to render official belief in its existence entirely unreason-able"; or (4) when "a warrant [is] so facially deficient — *i.e.*, in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923 (internal quotation marks omitted). In any of these four circumstances, then, the *Leon* good faith excep-tion does not apply.

## A.

The core of the district court's rejection of the good faith exception was premised upon the third circumstance identified by *Leon* — that the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* The district court found that Unger submitted a "bare bones" affidavit that was so deficient that any "reasonably well[-]trained officer would have known the search was illegal, despite the Magistrate Judge's authorization," and that, in issuing the warrant, the magistrate essen-tially "acted as a rubber stamp for law enforcement." J.A. 96. As set forth below, we cannot agree.[1]

Although the concept of probable cause resists an exacting defini-tion, it "exist[s] where the known facts and circumstances are suffi-cient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Because "[i]t is well settled that probable cause may be founded upon hearsay and information received from informants," *United States v. Dequasie*, 373 F.3d 509, 518 (4th Cir. 2004), a judicial officer's assessment of probable cause based upon the totality of the circumstances must include a review of "the 'veracity' and 'basis of knowledge' of per-sons supplying hearsay information." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Certainly, an informant's reliability may also be bolstered

---

[1]Perez does not contend that Unger misled the magistrate with false information or that the warrant is so deficient on its face that no officer could reasonably believe it was valid.

by "[t]he degree to which [the] informant's story is corroborated." *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004); *United States v. Lalor*, 996 F.2d 1578, 1580 (4th Cir. 1993). But, "there is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible." *Dequasie*, 373 F.3d at 519 (internal quotation marks and alteration omitted). The officer applying for the warrant "need not . . . entirely eliminate the risk that an informant is lying or in error." *United States v. Capozzi*, 347 F.3d 327, 333 (1st Cir. 2003) (internal quotation marks omitted), *cert. denied*, 124 S. Ct. 1187 (2004).

We conclude that Unger's reliance on the warrant was objectively reasonable. Undeniably, the information supplied by Unger within the four corners of his affidavit leaves much to be desired. On its face, it does not identify the informant or even make clear whether the informant was known or anonymous. Moreover, the affidavit standing alone does not explain the basis for Unger's conclusion that the source was "reliable and credible." There are no details supplied by the affidavit itself that would explain the nexus between the informant and the alleged wrongdoers.

However, we are not limited to consideration of only the facts appearing on the face of the affidavit. *See Legg*, 18 F.3d at 243 ("[E]ven assuming that the affidavit itself lacked sufficient indicia of probable cause to support reasonable reliance on the warrant, the affidavit did not contain all of the facts presented to the magistrate."). Instead, "the court should examine the totality of the information presented to the magistrate in deciding whether an officer's reliance on the warrant could have been reasonable." *Id.* at 244 n.1.

During the application process, Unger presented the magistrate with Taylor's signed statement, which the affidavit explicitly referenced. Taylor's statement was sufficiently detailed for the magistrate to conclude, first, that the information was supplied to Unger in person by a known witness. There is a substantial difference between an informant who deals with the authorities in person and an anonymous phone caller. Indeed, "courts have had no difficulty distinguishing between cases involving face-to-face encounters with informants and cases involving anonymous tipsters." *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000). Unlike an anonymous tipster, "an

informant who meets face-to-face with an officer provides the officer with an opportunity to assess his credibility and demeanor and also exposes himself to accountability for making a false statement." *Dequasie*, 373 F.3d at 523. Second, the statement clearly indicated that Taylor's knowledge derived from personal observation rather than hearsay, observation that was facilitated by Taylor's relationship with Parkinson's daughter. Thus, the magistrate was presented with a detailed basis for Taylor's knowledge. *See Gates*, 462 U.S. at 268 n.20 (White, J., concurring). Furthermore, Taylor's statement reflected his personal concern for his girlfriend's well-being, which we have found to be another indication of an informant's credibility. *See Dequasie*, 373 F.3d at 523 (recognizing that informant's "obvious personal interest in [the victim's] well-being" supplied "a corresponding motive to be truthful"); *cf. United States v. Miller*, 925 F.2d 695, 699 (4th Cir. 1991) (explaining that an informant's personal interest can "creat[e] a strong motive to supply accurate information"). In light of all the circumstances presented to the magistrate, we conclude that Unger reasonably concluded that Taylor was credible.

One additional point bears mentioning. The district court noted that the information supplied by Taylor to Unger was stale, indicating that the information supplied by Taylor was more than one year old. And, in fact, neither the affidavit nor Taylor's statement indicates when Taylor observed the drug related activity. The district court, therefore, suggested that the magistrate "did not know the age of the information presented in the affidavit," J.A. 91, which further eroded the magistrate's basis for finding probable cause. *See United States v. McCall,* 740 F.2d 1331, 1336 (4th Cir. 1984) ("[E]vidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial to establish the defendant's guilt."). Presumably, the district court's observation was based upon Taylor's testimony at the suppression hearing that he did not tell Unger that the information was as fresh as "within days" of their meeting. The district court, however, did not acknowledge Unger's contradictory testimony that Taylor claimed he had witnessed Perez's drug use recently.

Although the conflicting testimony regarding what Taylor originally said about the freshness of the information may well be relevant to the theory that Unger knowingly or recklessly misled the magistrate, Perez does not make this argument. Moreover, this theory did

not serve as one of the bases for the district court's ruling, which rested instead on the court's conclusion that the affidavit completely lacked any indicia of probable cause and that the magistrate that issued the warrant did not adequately perform its detached and neutral judicial function.

Our focus, therefore, is properly on the information presented to the magistrate. Taylor, of course, was not able to comment on what information was presented to the magistrate. At the suppression hearing, Unger's uncontroverted testimony was that Unger stated orally to the magistrate that Taylor, during the July 11 meeting, indicated that Perez's conduct had been "ongoing for a period of time," and that Taylor had witnessed the events he described "within days" of his encounter with Unger. J.A. 62. As it is the only evidence of what was presented to the magistrate regarding the staleness of Taylor's information, Unger's reliance on the warrant was reasonable in this regard as well. *Cf. United States v. Edwards*, 798 F.2d 686, 691 (4th Cir. 1986) (concluding that officer's unrecorded oral presentation of vital information not contained in the supporting affidavit did not preclude application of good faith exception).

In light of the totality of the circumstances, Unger's reliance on the warrant was objectively reasonable. The affidavit, when considered together with Taylor's statement that was presented to the magistrate, was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted).

## B.

The district court's conclusion that the *Leon* good faith exception does not apply to Unger's "bare bones" affidavit was premised on our decision in *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996). In *Wilhelm*, an officer obtained a search warrant based solely upon an anonymous phone caller's tip that the caller had recently observed marijuana sales in Wilhelm's residence. The officer did not learn the caller's name or any other identifying information, nor did he meet with the caller in person at any point. Nevertheless, the officer's affidavit described the anonymous caller as "a reliable source who is a concerned citizen, a resident of Iredell County, a mature person with

personal connections with the suspects and has projected a truthful[ ] demeanor to this applicant." *Id.* at 118. The affidavit indicated that the applying officer had confirmed directions to the residence supplied by the caller and that the caller's description of the drug transactions (for which the officer gave no specific details) was consistent with the officer's "knowledge of how marijuana is packaged and sold." *Id.*

We held that the affidavit was insufficient to support the issuance of a search warrant for Wilhelm's residence because it "depended on information from an unnamed informant" and offered only "conclusory descriptions" rather than specific information that would establish the "informant's truthfulness or reliability." *Id.* at 120. Further, the tipster's description of the criminal activity, as recounted by the affidavit, could have been provided by "anyone who occasionally watches the evening news," without any knowledge of what was happening inside of the residence, and thus afforded no basis for a probable cause finding. *Id.* at 121.

Next, we held that the good faith exception did not apply because the facts presented the third circumstance identified in *Leon* — the supporting "affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted); *see Wilhelm*, 80 F.3d at 123. Specifically, we determined that the supporting affidavit, described as "bare bones," failed to justify reasonable reliance because (1) it provided only unsupported, conclusory statements rather than facts from which a magistrate could independently verify the existence of probable cause, and (2) the information was supplied by an unknown informant whose credibility could not be assessed. *See Wilhelm*, 80 F.3d at 121-22; *see also Dequasie*, 373 F.3d at 521, 524. We explained that the officer's reliance "on an unknown, unavailable informant" would not be reasonable "without significant corroboration," *Wilhelm*, 80 F.3d at 123, that was *actually presented* to the magistrate, *see id.* at 121-22.[2]

---

[2]In *Wilhelm*, we rejected the government's argument that the affiant officer did, in fact, corroborate various details "because the *only* evidence presented to the state magistrate was contained in [the supporting] affidavit." 80 F.3d at 121. Any additional information that was not presented to the state magistrate was "irrelevant" for purposes of determining whether an officer could reasonably rely upon the affidavit. *Id.* at 122.

In the present case, the district court found that Unger's affidavit presented "few distinguishing features" from the "bare bones" *Wilhelm* affidavit, noting only that Unger had a "personal encounter with the informant." J.A. 96. The district court, however, concluded that Unger's "brief meeting [with Taylor] does nothing to transform the 'bare-bones' affidavit" into one upon which Unger could reasonably rely. J.A. 96.

*Wilhelm* does not dictate the result reached by the district court. First, it is no small difference that Unger relied on information obtained in a face-to-face meeting with a witness who revealed his identity and social security number instead of the anonymous phone call at issue in *Wilhelm*. As previously noted, the circumstances necessarily surrounding a face-to-face meeting alone provide certain indicia of credibility that are lacking when the warrant is based solely on a telephone call from an anonymous, never-to-be-identified informant. *See Dequasie*, 373 F.3d at 523; *Christmas*, 222 F.3d at 144. Thus, very much unlike the affiant officer in *Wilhelm*, Unger was able to observe Taylor's demeanor and had at least some basis for assessing Taylor's credibility. Additionally, the fact that Taylor was willing to reveal his identity and tacitly accept responsibility for the accuracy of his statement bolstered his credibility.

Second, although *Wilhelm* did not find that the supporting affidavit was presented in bad faith, we observed that the officer's "use of phrases such as 'concerned citizen,' 'mature' and 'truthful demeanor' strike this court as attempts to endue the affidavit with the appearance of genuine substance; this tactic suggests that [the officer] knew that probable cause was lacking, and thus that reliance on the resulting warrant was not reasonable." *Wilhelm*, 80 F.3d at 123. The facts in *Wilhelm*, therefore, fit comfortably within *Leon*'s first category of circumstances that do not permit good faith reliance on a warrant. *See Leon*, 468 U.S. at 923 (good faith exception inapplicable when the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"). Even though *Wilhelm* does not explicitly identify this category as an analytical basis for declining application of the good faith exception, the officer's "puffing" regarding the reliability of the anonymous caller provided an additional reason to question that officer's reliance on the warrant. *See Dequasie*, 373 F.3d at

524-26. Because Unger had an articulable basis for judging Taylor's credibility, this case does not present the same impediment to good faith reliance.

Third, Unger's affidavit submitted with the warrant application, unlike the one in *Wilhelm*, was not a "bare bones" affidavit containing "wholly conclusory statements which lacked the facts and circumstances from which a judicial officer could have independently determined probable cause." *Dequasie*, 373 F.3d at 524. The *Wilhelm* affidavit was completely devoid of any details that would have allowed a judicial officer to conclude the informant was credible or that there was a nexus between the informant and the defendant or the premises to be searched. In fact, the affidavit in *Wilhelm* might as well have simply stated, "Drugs are being sold at Wilhelm's home — take my word for it, the source is credible and the description of the sales is consistent with my knowledge of a typical drug transaction." A "'bare bones' affidavit is similar to, if not the same as, a conclusory affidavit" in that it "states only the affiant's belief that probable cause existed." *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000) (internal quotation marks omitted). Hence, in *Wilhelm* we concluded that the magistrate, in concluding this take-my-word-for-it affidavit established probable cause, essentially shirked his duty to act independent of law enforcement and "acted as a rubber stamp." *Wilhelm*, 80 F.3d at 123. As detailed previously, the information presented by Unger to the magistrate does far more than merely state "the affiant's belief that probable cause existed." *Williams*, 224 F.3d at 533 (internal quotation marks omitted).

Finally, for the reasons explained previously, the magistrate's issuance of a search warrant pursuant to Unger's application can in no sense be viewed as tantamount to "act[ing] as a rubber stamp." *Wilhelm*, 80 F.3d at 123. To the extent that the district court's statement that the "issuing judicial official acted as a rubber stamp for law enforcement," J.A. 96, suggests that the magistrate judge abandoned his neutral role in some fashion *unconnected* to the bare-bones premise, we disagree. We find no evidence in the record supporting the theory that the issuing magistrate judge abandoned his neutral role as contemplated by *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979), where the issuing magistrate judge effectively "allowed himself to become a member, if not the leader, of the search party which was

essentially a police operation," *id.* at 326-27. *See also Leon*, 468 U.S. at 923.

## III.

For the reasons set forth above, we conclude that Deputy Unger's reliance on the search warrant for the contraband that precipitated Perez's arrest was objectively reasonable under *Leon*. Accordingly, we reverse the decision of the district court.

*REVERSED*