**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4683**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

DEAN R. GATHERUM,

                Defendant - Appellant.

Appeal from the United States District Court for the Southern
District of West Virginia, at Beckley.    Thomas E. Johnston,
District Judge.  (5:07-cr-00105-1)

Argued:  March 27, 2009              Decided:  July 7, 2009

Before MICHAEL and TRAXLER, Circuit Judges, and Thomas D.
SCHROEDER, United States District Judge for the Middle District
of North Carolina, sitting by designation.

Affirmed by unpublished opinion.   Judge Traxler wrote the
majority opinion, in which Judge Schroeder joined.   Judge
Michael wrote a dissenting opinion.

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Charleston, West Virginia, for Appellant.   Karen B.
Schommer, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West
Virginia, for Appellee.   **ON BRIEF:** Mary Lou Newberger, Federal
Public Defender, David R. Bungard, Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston,
West Virginia, for Appellant.   Charles T. Miller, United States
Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

TRAXLER, Circuit Judge:

Dean Gatherum pleaded guilty to possession of child pornography, preserving his right to appeal the district court's denial of his motions to suppress. Because we find no error in the district court's rulings, we affirm Gatherum's conviction.

## I.

Gatherum registered as a sex offender in accordance with West Virginia law, and two state troopers went to his house to confirm information he provided when registering. Gatherum indicated when he registered that he had a personal computer with internet access. While the officers were at Gatherum's home, they asked Gatherum for consent to search his computer. Gatherum agreed and signed a consent form provided to him by Trooper Eldridge.

Eldridge used a program that permitted him to browse the computer files and view video and images stored on Gatherum's computer. Eldridge viewed a series of "thumbnail" previews of images that featured three males standing in a wooded area. The progressing images showed the men removing their clothes and engaging in sexual activity. While two of the men appeared to be more than 18 years old, the third appeared to Eldridge to be between 12 and 14 years old. Eldridge sought Trooper Summers's opinion, and he, too, believed that the third male was between 12 and 14 years old.

Eldridge told Gatherum that he believed the images were child pornography and that he was going to use the images as the basis for seeking a search warrant. When Eldridge described the pictures at issue to Gatherum, Gatherum explained that he had gotten the pictures from a website called "Mike18.com" and that the website had a disclaimer stating that all of the models were at least 18 years old. (Each of the images had a Mike18.com logo in the corner, although Eldridge was not aware of that fact at the time). Eldridge refused Gatherum's offer to log-on to Mike18.com to show the troopers the age certification for the model the troopers believed to be underage.

At the troopers' request, Gatherum accompanied them to the state police barracks for further questioning. Gatherum continued to maintain that the images all came from the Mike18.com website, and Gatherum told the troopers that the website included a picture of the apparently underage model holding a passport that showed his birth date.

After interviewing Gatherum, Eldridge prepared an application for a warrant to search for child pornography. In the affidavit supporting the application, Eldridge set forth in a fair amount of detail the specialized training he had received in "computer forensics, criminal use of computers and the Internet and the investigation of matters concerning child sexual exploitation," J.A. 573, and the affidavit noted that

3

Gatherum was a registered sex offender. With regard to the facts gathered during Eldridge's search of the computer, the affidavit stated:

> [T]he affiant conducted a secure preview of Dean Gatherum's home computer. During this preview, the affiant observed that Dean Gatherum's computer had numerous graphic picture files of three male[s] engaged in sexually explicit conduct. The affiant further observed that one of the males depicted in these pictures appeared to be approximately 12 to 14 years of age. The affiant further observed that Corporal Summers examine[d] these picture files, in which he too agreed that the one of the male subjects participating in the pictures appeared to be 12 to 14 years old.
>
> The affiant brought these pictures to Dean Gatherum's attention, in which he advised that he had obtained them from a web site on the Internet.

J.A. 581-82. The affidavit did not include copies of the images themselves or otherwise describe the nature of the sexually explicit conduct pictured, nor did the affidavit recount Gatherum's claim about the age-disclaimer on Mike18.com.

A state-court judge concluded that the affidavit established probable cause, and the search warrant was issued and executed that day. Gatherum's computer was seized, as were a number of CD-ROMs that were found under Gatherum's bed. Images on those CD-ROMs led to the child pornography charge to which Gatherum pleaded guilty.

The day after the search warrant was executed, Gatherum was admitted to a hospital for an in-patient psychiatric evaluation.

4

Four days later, Trooper Eldridge learned that Gatherum was to be discharged. Eldridge went to the hospital and asked if Gatherum would return to the police barracks for another interview. Gatherum agreed. Eldridge did not tell Gatherum that he had already obtained warrants for Gatherum's arrest (based on the images found on the CD-ROMs).

At the police barracks, Trooper Smith advised Gatherum of his Miranda rights before the interview began. Smith told Gatherum that he was not under arrest and was free to leave at any time, without mentioning the arrest warrants. Gatherum signed a form waiving his rights, and Smith began the interview. When Gatherum started making incriminating statements, Smith brought Eldridge into the room. Eldridge reviewed the Miranda form with Gatherum and reaffirmed that Gatherum was not under arrest, again without mentioning the outstanding arrest warrants. During the interview, Gatherum admitted that the CD-ROMs contained images of child pornography. As soon as the interview was over, Eldridge arrested Gatherum on the outstanding warrants.

Gatherum moved to suppress the evidence seized pursuant to the search warrant and the statements he gave upon his release from the hospital. The district court denied the motions, concluding that Eldridge's affidavit supporting the search warrant application was sufficient to establish probable cause,

5

that there were no material omissions in the affidavit that would invalidate the warrant, and that Gatherum was not coerced into giving the post-hospitalization statements.  This appeal followed.

II.

We first consider Gatherum's challenges to the search warrant.

A.

West Virginia law prohibits the possession of "material visually portraying a  minor engaged in sexually explicit conduct."  W. Va. Code Ann. § 61-8C-3.[1]  Gatherum contends that because Eldridge's affidavit did not include copies of the thumbnail images at issue or describe the nature of the images in any detail, there was no basis for the issuing judge to find probable cause that a minor was involved or that the minor was engaging in sexually explicit conduct.

Preliminarily, we reject any suggestion that a search-warrant affidavit must include copies of images giving rise to the request for a warrant.  See United States v. Lowe, 516 F.3d 580, 586 (7th Cir. 2008) ("As a general matter, an issuing court does not need to look at the images described in an affidavit in

_____

[1] Although Gatherum pleaded guilty to federal charges, he was initially arrested on state charges.  The federal statute is similar to the state statute.  See 18 U.S.C.A. § 2252A(a)(5)(B).

6

order to determine whether there is probable cause to believe that they constitute child pornography."). Including copies of the images believed to be child pornography would certainly aid in a probable-cause determination, but the relevant question is whether "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in a particular place." United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (internal quotation marks omitted). The probable-cause standard "is not defined by bright lines and rigid boundaries. Instead, the standard allows a magistrate judge to review the facts and circumstances as a whole and make a common sense determination of whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (internal quotation marks omitted). Given the fluid nature of the probable-cause standard and the deference to which the magistrate's determination is entitled, see id., we see no reason to establish a bright-line rule requiring investigating officers to provide magistrates with copies of the images they believe to be unlawful. Cf. New York v. P.J. Video, 475 U.S. 868, 874 n.5 (1986) ("[W]e have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure.").

We turn now to the ultimate question of whether the affidavit in this case was sufficient to support the issuance of the search warrant. As previously noted, the affidavit stated that Trooper Eldridge and Trooper Summers viewed the images at issue and that both believed one of the males pictured was between 12 and 14 years old. In our view, it was entirely reasonable for the magistrate to accept the officers' estimation of the child's age when determining whether probable cause existed. While some 16- or 17-year-old models might be difficult to distinguish from 18-year-olds, the physical differences between a 12-year-old model and an 18-year-old model generally would be significant and readily apparent. That both troopers believed the model at issue might be so young provided the magistrate with a reasonable basis for concluding that the images at issue involved a minor. See United States v. Battershell, 457 F.3d 1048, 1053-54 (9th Cir. 2006) (finding affidavit sufficient in child pornography case where officer described images as depicting "young female[s] (8-10 YOA)" and noting that "we have accepted, for purposes of an affidavit in support of a search warrant, the conclusory age estimates made by civilians and other untrained lay witnesses without demanding a detailed explanation of how the witnesses reached that conclusion"). We therefore conclude that the information in the

8

affidavit was sufficient to establish a fair probability that the images at issue depicted a minor.

The more difficult question, however, is whether the affidavit was likewise sufficient to establish that the minor was engaged in sexually explicit conduct. Trooper Eldridge stated in his affidavit that he had viewed "graphic picture files" showing three males, including one he believed to be a minor, engaging in "sexually explicit conduct." J.A. 581. Although the statute prohibits the possession of material depicting minors engaged in sexually explicit conduct, the statute specifically defines the acts that constitutes sexually explicit conduct, such as sexual intercourse or the exhibition of genitals in a sexual context. See W. Va. Code § 61-8C-1(c); see also 18 U.S.C.A. §§ 2256(2)(A)(i), 2256(2)(A)(v) (West Supp. 2009). Because the affidavit did not include any description of the actual behavior depicted in the images at issue, it may be that the affidavit failed to provide sufficient information to permit the magistrate to make an independent determination of whether probable cause existed. See Illinois v. Gates, 462 U.S. 213, 239 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." (emphasis added)).

9

We need not definitively determine whether the affidavit was sufficient in that regard, however. Even if the affidavit was deficient, suppression of the evidence is not required, because the officers acted in good faith and were entitled to rely on the warrant. See United States v. Leon, 468 U.S. 897, 926 (1984).

"[U]nder Leon's good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was objectively reasonable." Perez, 393 F.3d at 461 (internal quotation marks omitted). "[S]earches conducted pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Id. (internal quotation marks omitted). Under Leon, however, reliance on a warrant is not objectively reasonable if: (1) the magistrate was misled by false information knowingly or recklessly included in the underlying affidavit, id.; (2) "the magistrate acted as a rubber stamp for the officers and so wholly abandoned his detached and neutral judicial role," United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (internal quotation marks omitted); (3) the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence

10

entirely unreasonable," Leon, 468 U.S. at 923 (internal quotation marks omitted); or (4) the warrant itself is so facially deficient in particularizing the place to be searched or the evidence to be seized that "the executing officers cannot reasonably presume it to be valid, id.

The only exceptions arguably relevant here are the second and third,[2] but we do not believe that either precludes reliance on the warrant issued in this case. The affidavit cannot be described as so bare-boned that the magistrate's issuance of the warrant could be viewed as a mere rubber-stamping of the warrant application, nor is the affidavit so lacking in indicia of probable cause that it was unreasonable for the officers or the magistrate to conclude that probable cause existed.

The affidavit explained that Gatherum was a registered sex offender who had "numerous graphic picture files" on his home computer, J.A. 581, and the affidavit outlined Trooper Eldridge's extensive training in the investigation of similar crimes. The affidavit stated that Eldridge and Trooper Summers had viewed the images themselves and had both determined that

---

[2] With regard to the first Leon exception, there was no false information included in the affidavit, and, as we will discuss in more detail below, there is no evidence that Eldridge intentionally or recklessly omitted any material information from his affidavit. As to the fourth exception, we do not believe that the warrant itself was facially deficient.

the images depicted a minor engaged in sexually explicit behavior. Because the affidavit specifically referred to the relevant West Virginia statute, which sets out a list of actions that constitute "sexually explicit conduct,"[3] the kind of conduct that could have been depicted in the images was necessarily limited. While a more detailed description of the conduct pictured would have been helpful, courts have found similar language used under similar factual situations to be sufficient to support a finding of probable cause. See United States v. Smith, 795 F.2d 841, 848 (9th Cir. 1986) ("As to the affidavit's 'conclusory' statement that the photographs depicted 'sexually explicit conduct,' we do not find the character of the allegation fatal to the warrant. Although more specific descriptions of the photographs would have been desirable, we note that the affidavit specifically refers to violation of section 2251, directing the magistrate to the child pornography statute and its definitions. These definitions are quite specific, and the magistrate reasonably considered the statement

---

[3] See W. Va. Code § 61-8C-1(c) (defining sexually explicit conduct" as "(1) Genital to genital intercourse; (2) Fellatio; (3) Cunnilingus; (4) Anal intercourse; (5) Oral to anal intercourse; (6) Bestiality; (7) Masturbation; (8) Sadomasochistic abuse, including, but not limited to, flagellation, torture or bondage; (9) Excretory functions in a sexual context; or (10) Exhibition of the genitals, pubic or rectal areas of any person in a sexual context.").

12

of an experienced postal inspector that the photos depicted 'sexually explicit conduct' within the statute." (citation and footnote omitted)); see also Battershell, 457 F.3d at 1052 ("The statement that the photographs depict sexually explicit conduct is similar to many other factual conclusions routinely accepted by courts in applications for warrants. Factual conclusions are a normal, necessary, and perfectly acceptable part of an affidavit." (internal quotation marks and alterations omitted)). While there also is case law to the contrary, see United States v. Brunette, 256 F.3d 14, 17 (1st Cir. 2001) (concluding that affidavit parroting the statutory definition of child pornography but not otherwise describing the nature of the images was not sufficient to support the magistrate's probable-cause finding), this court has yet to address the question directly. Under these circumstances, we cannot say that an objectively reasonable officer should have known that the affidavit was insufficient. See United States v. Bynum, 293 F.3d at 195 ("Leon teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a subsequently invalidated warrant, unless a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." (internal quotation marks omitted)).

Accordingly, even if the absence of a detailed description of the conduct pictured in the relevant images rendered the affidavit deficient, the officers relied in good faith on the warrant issued by the magistrate, and the district court therefore properly denied Gatherum's suppression motion.

B.

Gatherum also argues that the warrant must be voided under Franks v. Delaware, 438 U.S. 154 (1978), because Trooper Eldridge intentionally omitted from his affidavit any mention of the Mike18.com website or the website's disclaimer asserting that all of its models, including the one Eldridge believed to be a minor, were at least 18 years old. We disagree.

Under Franks, a search warrant may be voided and the fruits of the search suppressed if the defendant establishes that the underlying affidavit contained material falsehoods that were knowingly or recklessly made. Where, as here, the claim involves omissions from the affidavit, the standard for establishing materiality is fairly high:

> [T]o be material under Franks, an omission must do more than potentially affect the probable cause determination: it must be necessary to the finding of probable cause. For an omission to serve as the basis for a hearing under Franks, it must be such that its inclusion in the affidavit would defeat probable cause for arrest. Omitted information that is potentially relevant but not dispositive is not enough to warrant a Franks hearing.

14

<u>United States v. Colkley</u>, 899 F.2d 297, 301 (4th Cir. 1990) (citations and internal quotation marks omitted).

Beyond the mere fact of omission, the record is devoid of evidence suggesting that Eldridge intentionally or recklessly failed to disclose to the issuing magistrate the Mike18.com information. Moreover, even if information about the disclaimers on the website and Gatherum's belief about the age of the models had been included in the affidavit, their presence would not have defeated probable cause. As discussed above, Trooper Eldridge and Summers both looked at the images and concluded that one of the models was between 12 and 14 years old. That was enough to establish probable cause that the model was underage, even in the face of Gatherum's (and Mike18.com's) insistence to the contrary. The district court therefore properly denied Gatherum relief on his <u>Franks v. Delaware</u> claim. See <u>United States v. Shorter</u>, 328 F.3d 167, 171, n.2 (4th Cir. 2003) (explaining that "the fact of an omission, standing alone, is not sufficient to demonstrate intent or reckless disregard" in cases where the omitted material is not "clearly critical" to the probable-cause determination (internal quotation marks omitted)).

## III.

Finally, we consider Gatherum's claim that the district court should have suppressed the statements Gatherum made when

15

he was interviewed after his release from the hospital. Although Gatherum was informed of and waived his <u>Miranda</u> rights before making the statements, he claims that the troopers' failure to inform him of the outstanding arrest warrants invalidated the <u>Miranda</u> waiver and rendered his statements inadmissible.

A waiver of <u>Miranda</u> rights is valid as long as "the waiver is made voluntarily, knowingly and intelligently." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (internal quotation marks omitted). A waiver is voluntarily, knowingly, and intelligently made if it was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and if it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Id.</u>; <u>see also</u> <u>United States v. Cristobal</u>, 293 F.3d 134, 139-40 (4th Cir. 2002).

"We engage in the same inquiry when analyzing the voluntariness of a <u>Miranda</u> waiver as when analyzing the voluntariness of statements under the Due Process Clause," <u>Cristobal</u>, 293 F.3d at 140, and thus ask whether "the defendant's will has been overborne or his capacity for self-determination critically impaired because of coercive police conduct," <u>id.</u> (citations and internal quotation marks omitted).

16

Because the failure to inform Gatherum of the warrants does not even approach the level of coercive, overreaching conduct that could render the Miranda waiver involuntary, see Colorado v. Connelly, 479 U.S. 157, 163 n.1 (1986) (collecting cases), we reject Gatherum's claim that his Miranda waiver was involuntary.

We likewise reject Gatherum's contention that the failure to inform him about the warrants "made it impossible for him to understand the nature of the rights he could invoke and the consequences of abandoning them." Brief of Appellant at 36. Preliminarily, we note that the waiver form Gatherum executed before the interview stated that Gatherum was being investigated for possession of child pornography, information that should have signaled to Gatherum the significance of the interview, just as a statement about the outstanding warrants might have. In any event, the troopers informed Gatherum about the nature of his Miranda rights and the consequences of a decision to waive those rights, which is all that is required under Moran. While knowledge of the outstanding warrants might have been useful to Gatherum when deciding whether to provide a statement, the troopers' failure to provide him with that information simply does not render the waiver invalid:

> We have held that a valid waiver does not require that an individual be informed of all information useful in making his decision or all information that might affect his decision to confess. We have never read the Constitution to require that the police supply a

17

> suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights. Here, the additional information could affect only the wisdom of a <u>Miranda</u> waiver, not its essentially voluntary and knowing nature.

<u>Colorado v. Spring</u>, 479 U.S. 564, 576-77 (1987) (citations, internal quotation marks and alterations omitted). Because the <u>Miranda</u> waiver was valid, the district court properly denied Gatherum's motion to suppress the statements made after his release from the hospital.

## IV.

For the reasons discussed above, we conclude that the district court properly denied Gatherum's motion to suppress the evidence seized pursuant to the search warrant and his motion to suppress the statements he gave after waiving his <u>Miranda</u> rights. Accordingly, we hereby affirm Gatherum's conviction.

<u>AFFIRMED</u>

18

MICHAEL, Circuit Judge, dissenting:

Because the officer's affidavit presented to the state judge failed to provide a factual basis on which the judge could independently determine that there was probable cause to issue the warrant for the search of Dean Gatherum's home, and because the judge acted as a rubber stamp for the officer's legal conclusions, see United States v. Leon, 468 U.S. 897, 914 (1984), I respectfully dissent.

## I.

The search warrant in this case was issued under a West Virginia statute that prohibits the possession, "with knowledge," of "any material visually portraying a minor engaged in sexually explicit conduct." W. Va. Code Ann. § 61-8C-3. See also 18 U.S.C. 2252A(5)(B). "Sexually explicit conduct" is defined to include several specific sexual acts. W. Va. Code Ann. § 61-8C-1(c). As the majority notes, in order for a search warrant to be properly issued under Illinois v. Gates, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." 462 U.S. 213, 239 (1983) (emphasis added). See ante at 9. The affidavit in this case merely parrots the relevant statute, W. Va. Code Ann. § 61-8C-3, and provides no facts upon which the state judge could have conducted an independent

19

probable cause analysis. Rather than describing, even superficially, what the photographs found on Gatherum's computer depicted, Corporal Eldridge's affidavit simply states that the photographs showed three males (one of whom the officer believed to be 12 to 14 years old[1]) "engaged in sexually explicit conduct." J.A. at 581-82.

Whether or not the activities in the photographs constituted "sexually explicit conduct" was a matter for the state judge to decide without deferring to the officer's "bare conclusion." See Gates, 462 U.S. at 239. "The point of the Fourth Amendment, which often is not grasped by zealous officers . . . [is that] [i]ts protection consists in requiring that . . . inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." United States v. Ventresca, 380 U.S. 102, 106 (1965) (quoting Johnson v. United States, 333 U.S. 10, 13-14 (1948)). See also South Dakota v. Opperman, 428 U.S. 364, 370 n.5 (1976) ("[The Supreme Court has] frequently observed that the warrant requirement assures that legal inferences and conclusions as to probable cause will be drawn by a neutral magistrate unrelated to the

_____

[1] I agree with the majority's conclusion that it was reasonable for the judge to accept the officer's estimate of the younger male's age. See ante at 8-9.

criminal investigative-enforcement process"). Thus, the benefit of having a neutral magistrate make the probable cause determination is forfeited if the magistrate defers to an officer's legal conclusions in an affidavit that merely recites general statutory language. A detached and independent review is especially important in the context of determining whether images involve child pornography, a determination that by its very nature will often involve a high degree of subjectivity.

In United States v. Brunette, 256 F.3d 14 (1st Cir. 2001), the First Circuit applied these principles in almost identical circumstances to those presented here. In that case a search warrant was issued based on a single affidavit, written by a law enforcement agent, which asserted that he had viewed thirty-three images traced to the defendant and that they met the statutory definition of child pornography. Id. at 16. The agent neither appended copies of these images to his affidavit nor included a description of the images' contents. Id. The First Circuit held that the government had failed to make a showing of probable cause because "[t]he evidence on the nature of the images consisted solely of [the agent's] legal conclusion parroting the statutory definition." Id. at 17. This conclusion was based on that court's recognition that the "inherent subjectivity [of identifying images that are

21

'lascivious'] is precisely why the determination should be made by a judge, not an agent." Id. at 18.

The majority cites two Ninth Circuit cases reaching the opposite conclusion on similar facts, but I believe the reasoning in Brunette is more persuasive. First, the majority points to United States v. Smith, 795 F.2d 841 (9th Cir. 1986), which is distinguishable because the affidavit "[did] not stand on the evaluation of the photographs alone," but also included statements by a pediatrician, the defendant, and the two alleged victims. Id. at 849. Furthermore, Smith reaches the unwarranted conclusion that "[t]he statement that the photographs depict sexually explicit conduct is similar to many other factual conclusions routinely accepted by courts." Id. at 848 n.7. This reasoning, adopted by the second case cited by the majority, United States v. Battershell, 457 F.3d 1048 (9th Cir. 2006), mistakes a legal conclusion -- whether the contents of a photograph amount to "sexually explicit conduct" -- with the conclusion's factual underpinnings (the contents of the photograph itself).

An officer can readily provide the factual description required to allow an independent determination by the magistrate. In most instances it would be enough for the officer to describe the "focal point and setting of the image,

22

and [the] pose [or activity] and attire of the subject."[2] Brunette, 256 F.3d at 20. But in this case the judge was presented with an affidavit that provides no factual details whatsoever regarding the substance of the photographs in question. The affidavit is simply insufficient to support a finding of probable cause.

## II.

For similar reasons, the Leon good faith exception does not apply in this case. As a general matter, evidence need not be excluded when police officers act in objectively reasonable reliance on a search warrant issued by a neutral magistrate. United States v. Leon, 468 U.S. at 926. Reliance is not warranted in certain circumstances, however, such as when "the magistrate acted as a rubber stamp for the officers and so 'wholly abandoned' his detached and neutral 'judicial role'." United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (citing Leon, 468 U.S. at 923). Because the state judge in this case acted as a rubber stamp by failing to conduct an independent probable cause inquiry and instead simply adopted

---

[2] The best course of action, and the one most certain to ensure a valid probable cause finding, would be to include copies of the photographs themselves with the affidavit. I agree with the majority, however, that this is not a requirement. See ante at 7-8.

23

the one officer's legal conclusion that the pictures he found portrayed "sexually explicit conduct," the officers were not objectively justified in relying on the warrant.

The majority offers four basic reasons to support its conclusion that the state judge did not act as a rubber stamp (and that the affidavit was not "so lacking in indicia of probable cause", ante at 11, that it could not be reasonably relied on).  First, the majority points out that the affidavit "explained that Gatherum was a registered sex offender who had 'numerous graphic picture files' on his home computer."  Ante at 11.  But this merely resurrects the basic questions before us: What specific activities did the pictures portray, and did those activities constitute "sexually explicit conduct"?

Second, the majority notes that the "affidavit outlined [Corporal] Eldridge's extensive training in the investigation of similar crimes."  Id.  This statement refers to ten pages of "Facts for Belief" that the officer included in his affidavit.  J.A. 573-582.  The facts showing the officer's training do not remove the state judge's decision from the "rubber stamp" category.  These "facts" are boilerplate, listing, for example, many "characteristics [of] people who sexually exploit children" that have no specific bearing on this case.  It is telling that amidst the ten pages of "facts," the officer included only three sentences pertaining to, with one

24

only vaguely describing, the photographs at issue. Furthermore, regardless of the officer's training, the state judge himself had to ultimately determine the factual content of the photographs. There was insufficient information for the judge to perform that function.

Third, the majority reasons that "[b]ecause the affidavit specifically referred to the relevant West Virginia statute, which sets out a list of actions that constitute 'sexually explicit conduct,' the kind of conduct that could have been depicted in the images was necessarily limited." Ante at 12. However, this assumes that the officer would refer to the statute only if one of the listed "sexually explicit" activities was implicated. Thus, the officer's cryptic reference to the statute only reinforces the conclusion that the judge functioned solely as a rubber stamp in making the probable cause determination. Again, the affidavit gave no factual information about the contents of the photographs, instead merely parroting the conclusory language of the statute. This rendered the judge unable to make an independent determination as to whether there was probable cause to believe the photographs violated the statute.

Fourth, the majority states that Corporal "Eldridge and Trooper Summers had viewed the images themselves and had both determined that the images [contained] sexually explicit

25

behavior." Ante at 11-12. But it was for the judge, not the officers, to make this determination. The problem is that the judge in this case could only substitute the officers' conclusions for his own. As a result, the judge committed precisely the error warned of in Gates, 462 U.S. at 239, and became merely a rubber stamp for the officers' determination.

### III.

Today's decision allows law enforcement officers to submit legal conclusions, rather than factual observations, to a magistrate and allows the magistrate to issue a warrant without conducting an independent probable cause determination. We should make clear that the affidavit in this case was insufficient to support probable cause and thereby put law enforcement officers and magistrates on notice for the future. In all events, because the affidavit was inadequate, and because the state judge served as a rubber stamp for the officer's conclusions, evidence seized pursuant to the invalid search warrant should have been suppressed. I would therefore vacate Gatherum's conviction.