PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RAYMOND LEWIS ANDREWS,

*Defendant-Appellant.*

No. 08-4721

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Louise W. Flanagan, Chief District Judge.
(5:07-cr-00249-FL-1)

Argued: May 13, 2009

Decided: August 12, 2009

Before TRAXLER, Chief Judge, GREGORY, Circuit Judge,
and Frederick P. STAMP, Jr., Senior United States District
Judge for the Northern District of West Virginia,
sitting by designation.

Affirmed by published opinion. Chief Judge Traxler wrote the
opinion, in which Judge Gregory and Senior Judge Stamp
joined.

## COUNSEL

**ARGUED:** Stephen Clayton Gordon, OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Raleigh, North Carolina, for

Appellant. Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

## OPINION

TRAXLER, Chief Judge:

Following a bench trial, Raymond Lewis Andrews was found guilty of illegally possessing a firearm after having been convicted of a felony. *See* 18 U.S.C. § 922(g)(1). On appeal, Andrews challenges the district court's denial of his motion to suppress evidence seized from his house and used to secure a conviction against him. Finding no error in the ruling of the district court, we affirm.

I.

On August 24, 2006, Cumberland County law enforcement officials were conducting a parcel interdiction at a Federal Express ("FedEx") shipping center in Fayetteville, North Carolina. Through the use of drug dogs, officers identified a suspicious package. The package was addressed to "Crystal Rhodes" at 1528 Cashiers Lane, Apartment 7, Fayetteville, North Carolina. Pursuant to a search warrant, officials opened the package and discovered approximately eight pounds of marijuana.

At the request of the Cumberland County officers, Detective Roy Gallegos of the Fayetteville Police Department agreed to arrange a controlled delivery of the intercepted

package to the addressee. After taking custody of the package, Detective Gallegos learned that FedEx had received a telephone call instructing that the package in question be delivered to Apartment 9 rather than Apartment 7. Detective Gallegos met with FedEx employees to confirm that FedEx changed the delivery address at the request of the shipper. Detective Gallegos obtained a "Customer Exception Request" computer printout reflecting that "Becky Rhodes," the purported customer who was shipping the package, called on August 24 and requested that the delivery address be changed to "Apartment 9"–-the rest of the delivery address, including the street number, remained unchanged.

With this additional information in hand, Detective Gallegos dispatched police officers to investigate the new delivery location. The officers discovered that 1528 Cashiers Lane, Apartment 9, did not exist and that the only Apartment 9 located on Cashier's Lane had a street address of 1520 Cashiers Lane. Detective Gallegos also determined that no one by the name of Crystal Rhodes, the addressee named on the package, resided at either 1528 Cashiers Lane, or at 1520 Cashiers Lane. Based on these facts, Detective Gallegos concluded that the intended destination for the package was Apartment 9, 1520 Cashiers Lane.

In order to apprehend the unknown persons involved in the shipping and receiving of this package, Gallegos applied for an anticipatory search warrant for marijuana and other controlled substances, firearms and "items of drug furtherance." J.A. 83. The anticipatory warrant was to be executed following the controlled delivery:

> WITHIN 48 HOURS OF THE ISSUANCE OF THIS WARRANT AN ATTEMPTED DELIVERY OF THE PACKAGE WILL TAKE PLACE. UPON DELIVERY AND ACCEPTANCE OF THE PACKAGE, PROBABLE CAUSE WILL EXIST THAT CONTROLLED SUBSTANCES WILL BE PRES-

ENT. BASED UPON DELIVERY OF THE PACK-
AGE . . . , AN ANTICIPATORY SEARCH
WARRANT IS SOUGHT FOR THE PREMISES
OF: 1520 CASHIERS LN, APT #9 FAYETTE-
VILLE, NORTH CAROLINA 28311.

J.A. 83. In the application, Gallegos explained that an inter-
cepted FedEx package containing marijuana was addressed to
1528 Cashiers Lane, Apartment 9, but that "A SEPARATE
INVESTIGATION REVEALED THAT 1528 CASHIERS
LN APT #9 *WAS ACTUALLY* 1520 CASHIERS LN FAY-
ETTEVILLE, NORTH CAROLINA 28311." J.A. 83 (empha-
sis added). The application did not explain that the package
was originally to be delivered to Apartment 7 at 1528 Cash-
iers Lane, or that FedEx changed the delivery address to
Apartment 9 at the request of the customer. Also, the applica-
tion provided no further details about the "separate" investiga-
tion.

In the affidavit accompanying the warrant application,
Detective Gallegos identified the address of the premises to
be searched as "1528 CASHIERS LN. APT #9." J.A. 82.
Gallegos "informed the magistrate, under oath, that he had
provided a mistaken address in the affidavit accompanying
the warrant application, and that the address to be searched
was 1520 Cashiers Lane, Apartment 9." J.A. 117. Then, "[i]n
clear view of the magistrate, Detective Gallegos manually
changed the address on the affidavit from 1528 to 1520, [and]
placed initials next to the change." *Id.* Finally,

> [w]hile still under oath, Detective Gallegos detailed
> the nature of the 'separate investigation' referred to
> in the search warrant application. Specifically, he
> told the magistrate that he sent police officers to
> 1528 Cashiers Lane who determined that the only
> house number 9 *on that street* corresponded to 1520
> Cashiers Lane.

*Id.* (emphasis added). Detective Gallegos also told the magistrate that the supposed recipient of the drug package, "Crystal Rhodes," did not reside at Apartment 7, 1528 Cashiers Lane—the original delivery address—or any other address in the vicinity: "[T]here was no Crystal Rhodes out there, that lived out there." J.A. 52. The magistrate concluded that probable cause existed and issued the anticipatory search warrant for 1520 Cashiers Lane, Apartment 9.

Finally, Detective Gallegos sent an officer posing as a Federal Express employee to deliver the drug package to 1520 Cashiers Lane, Apartment 9. Andrews answered the door, and the undercover officer explained "that the parcel was going to 1528 Number 9 but that number 9 did not exist" and that Andrews' "trailer was the only one with a 9 on it." J.A. 45. Andrews signed for the package using "John" as an alias, thanked the undercover officer and placed the package inside his residence.

According to Detective Gallegos, Andrews' acceptance of the package "triggered" the anticipatory search warrant. Before agents executed the warrant, however, they observed Andrews take the package from his trailer, walk it down the street to 1524 Cashiers Lane, Apartment 8, and place the package outside of the trailer at that address. Agents then arrested Andrews at 1524 Cashiers Lane immediately after he placed the package there.

Following the arrest of Andrews, law enforcement officers executed the search warrant for Andrews' trailer, resulting in the seizure of illegal drugs, drug paraphernalia, a Ruger rifle and ammunition. Andrews, after being provided his *Miranda* warnings, told Detective Gallegos "that he was receiving the box that was supposed to be delivered on the 24th to the corner trailer, which was number 7, and give it to a subject named Mason." J.A. 46.

Andrews, having previously been convicted of a felony, was indicted for illegally possessing a firearm. Andrews

moved to suppress the evidence seized in the search, arguing that the facts presented to the issuing judge were insufficient to establish probable cause because there was no evidence establishing a nexus between Andrews' home and the FedEx package containing marijuana.

Andrews' motion was considered initially by a federal magistrate judge, who concluded that the materials presented by Detective Gallegos, "combined with Gallegos' verbal statements to the [issuing] magistrate," established "a substantial basis [to believe] that following a controlled delivery of the intercepted parcel, a search of 1520 Cashiers Lane, Apartment 9 would uncover evidence of wrongdoing." J.A. 90. The magistrate judge rejected Andrews' contention that there were no facts presented connecting Apartment 9, *1520* Cashiers Lane, to the items sought in the search, concluding that a sufficient link was established through evidence that FedEx changed the apartment number at the request of the person shipping the package, making Apartment 9 "the current package address, regardless of what was actually written on the address label." J.A. 91. Andrews' residence was linked to the package because it was the only Apartment number 9 on the street.

Additionally, the magistrate judge concluded that even if the search warrant lacked probable cause, the evidence seized in the search would nevertheless be admissible under the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 919-21 (1984).

The district court agreed with the recommendation of the magistrate judge that Andrews' motion to suppress be denied and rejected Andrews' objections to the report and recommendation of the magistrate judge. Andrews argued that the issuing magistrate was not presented with sufficient evidence to find probable cause, and that the *Leon* good faith exception did not apply because Detective Gallegos intentionally or recklessly presented false information to the magistrate. *See*

*id.* at 923. Specifically, Andrews claimed that Detective Gallegos' affidavit incorrectly stated that the FedEx package was addressed to "1528 Cashiers Ln Apt. #9" when, in fact, the address written on the package was "1528 Cashiers Ln Apt. #7," and nothing on the face of the affidavit explained the circumstances surrounding the change.

The district court first addressed the good faith issue. *See United States v. Perez*, 393 F.3d 457, 460 (4th Cir. 2004) (explaining that where defendant challenges both the probable cause determination and the application of the good faith exception, the court may proceed directly to the issue of good faith). The court concluded that Andrews failed to demonstrate that any omission from Gallegos' affidavit was deliberate or was the result of recklessness. The district court reasoned that Detective Gallegos' sworn testimony before the state magistrate "undermine[d]" Andrews' argument that Detective Gallegos intentionally or recklessly misled the magistrate by failing to include in his affidavit the fact that the FedEx parcel was originally bound for Apartment 7, 1528 Cashiers Lane. J.A. 108. While applying for the warrant, Detective Gallegos mentioned to the state magistrate that although Apartment 9, 1528 Cashiers Lane, was not a valid address, Apartment 7, 1528 Cashiers Lane was valid. It is not clear, however, whether he explained to the magistrate that Apartment 7 was the initial FedEx delivery address or the circumstances causing the substitution of Apartment 9 for Apartment 7. Nevertheless, the court in essence concluded that the voluntary mention of such facts is inconsistent with the intent to mislead the magistrate by omitting them.

## II.

As did the district court, we exercise our discretion to forego discussing the validity of the search warrant and proceed directly to the question of whether the district court properly refused to suppress the evidence seized in the search based on the officers' good faith reliance on the warrant. *See*

*Leon*, 468 U.S. at 925; *United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994).

Generally, evidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule, *see United States v. Calandra*, 414 U.S. 338, 347-48 (1974); *Perez*, 393 F.3d at 460, the overarching purpose of which is "to deter future unlawful police conduct," *Calandra*, 414 U.S. at 347. The deterrence objective, however, "is not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith' within the scope of a search warrant issued by a magistrate." *Perez*, 393 F.3d at 461 (quoting *Leon*, 468 U.S. at 920); *see United States v. Mowatt*, 513 F.3d 395, 404 (4th Cir. 2008) ("[I]t is the magistrate's responsibility to determine whether probable cause exists, and officers cannot be expected to second-guess that determination in close cases."). Thus, in *Leon*, the Supreme Court modified the exclusionary rule to allow the use of evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Leon*, 468 U.S. at 900. "*Leon* teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (quoting *Leon*, 468 U.S. at 922 n.23). Accordingly, "under *Leon*'s good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" *Perez*, 393 F.3d at 461 (quoting *Leon*, 468 U.S. at 922).

Typically, "a warrant issued by a magistrate . . . suffices to establish that a law enforcement officer has acted in good faith in conducting the search" and thus searches executed "pursuant to a warrant will rarely require any deep inquiry

into reasonableness." *Leon*, 468 U.S. at 922 (internal quotation marks omitted). That said, the Supreme Court identified four circumstances in which an officer's reliance on a search warrant would not be "objectively reasonable": (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *id.* at 923; (2) "where the issuing magistrate wholly abandoned his judicial role" as a detached and neutral decisionmaker, *id.*; (3) where the officer's affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* (internal quotation marks omitted); and (4) where "a warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted). Andrews contends that three of these circumstances are present in his case, precluding the application of the *Leon* good faith exception.

## A.

Andrews contends that *Leon* does not apply because the facts supplied to the issuing magistrate so clearly failed to establish probable cause that reliance on the search warrant was unreasonable. *See Leon*, 468 U.S. at 923.[1] We disagree.

---

[1]Relying on *United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996), Andrews suggests that the applicable standard is whether the supporting affidavit provided a "substantial basis" for the magistrate to conclude probable cause exists. Under this view, the *Leon* good faith exception would be inapplicable if the magistrate did not have a "substantial basis" for determining probable cause.

Of course, the "substantial basis" test is the standard we use when reviewing a probable cause determination. *See United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004) ("'[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). In the *Leon* context, we begin with the assumption that there was not a substantial basis for finding probable cause; the only ques-

Assuming, without deciding, the information presented to the magistrate was insufficient to establish probable cause, it certainly was not "so lacking in indicia of probable cause" that reliance on the anticipatory warrant was "entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted).

Usually, an officer applies for a warrant to search a place for criminal evidence that is already located at the place-to-be-searched. By contrast, "[a]n anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'" *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (quoting 2 W. LaFave, Search and Seizure § 3.7(c) 398 (4th ed. 2004)). Otherwise, anticipatory warrants are very much the same as ordinary warrants—both are predicated on the notion that there is probable cause to believe that "evidence will be found *when the search is conducted*." *Id.* at 95.

Like the search warrant at issue in this case, "[m]ost anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition'"—which, when satisfied, becomes the final piece of evidence needed to establish probable cause. *Id.* at 94 (explaining that the search warrant would not be executed "until the parcel [containing child pornography] has been received by a person(s) and has been physically taken into the residence"). Here, the support affidavit supplied by

---

tion is whether reliance on a warrant that lacks such a "substantial basis" was nevertheless reasonable.

We have previously explained that *Wilhelm*'s substantial basis language is inconsistent with *Leon*. *See United States v. DeQuasie*, 373 F.3d 509, 521 n.17 (4th Cir. 2004) ("If a lack of substantial basis also prevented application of the *Leon* objective good faith exception, the exception would be devoid of substance." (internal quotation marks omitted)).

Detective Gallegos stated that "WITHIN 48 HOURS OF THE ISSUANCE OF THIS WARRANT AN ATTEMPTED DELIVERY OF THE PACKAGE WILL TAKE PLACE. *UPON DELIVERY AND ACCEPTANCE OF THE PACK-AGE, PROBABLE CAUSE WILL EXIST THAT CONTROLLED SUBSTANCES WILL BE PRESENT.*" J.A. 83 (emphasis added).

When an anticipatory warrant contains such a triggering condition, the magistrate's probable cause determination "goes not merely to what will probably be found *if* the condition is met" but "also to the likelihood that the condition will occur." *Grubbs*, 547 U.S. at 96. Indeed, if the magistrate did not have to consider whether it was likely that the triggering condition would ever occur, then "an anticipatory warrant could be issued for every house in the country, authorizing search and seizure *if* contraband should be delivered—though for any single location there is no likelihood that contraband will be delivered." *Id.* Thus, where an anticipatory warrant is conditioned on a triggering event, the probable cause determination is two-fold: "It must be true not only that *if* the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' but also that there is probable cause to believe the triggering condition *will occur.*" *Id.* at 96-97 (internal citation omitted).

Clearly, there was a sufficient basis here for the magistrate to conclude that satisfaction of the triggering condition—delivery and acceptance of a FedEx package known to contain marijuana—would supply probable cause for the search. *See id.* at 97 ("In this case, the occurrence of the triggering condition—successful delivery of the videotape to Grubbs residence—would plainly establish probable cause for the search."). A slightly more difficult question is whether the magistrate had probable cause to conclude that the triggering condition was likely to occur. Of course, we need not address that question as the issue before the panel is simply whether

the information before the magistrate was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted).

We conclude that the evidence presented to the magistrate was not so lacking that it would be unreasonable to believe there was probable cause linking Andrews' home to the FedEx parcel containing drugs. In considering this issue, we are not limited solely to the affidavit but rather "should examine the totality of the information presented to the magistrate." *Perez*, 393 F.3d at 462 (internal quotation marks omitted). At a minimum, the following facts were presented to the magistrate and provide a reasonable basis for finding probable cause to search Andrews' house upon delivery and acceptance of the package: a package known to contain approximately eight pounds of marijuana was shipped via FedEx to "Crystal Rhodes" at Apartment 9, 1528 Cashiers Lane, Fayetteville, North Carolina; no one known as "Crystal Rhodes," the purported recipient of the drugs, lived at 1528 Cashiers Lane; and that the only "Apartment 9" on the same street was located at 1520 Cashiers Lane.[2]

In view of these facts, we reject this particular challenge to the district court's application of the *Leon* good faith exception.

---

[2]We note that, although the search warrant was "triggered" when Andrews accepted delivery of the package containing drugs and took it into his residence, law enforcement officers apparently did not execute the search until after Andrews removed the package from the residence and dropped it on the adjoining property. The search warrant, however, was not limited to the package alone; rather, the magistrate found probable cause that firearms and "other items of drug furtherance" would be found on the premises when the triggering condition occurred and the search was conducted. J.A. 83. Andrews does not challenge the breadth of the search warrant. *See United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006) ("The Fourth Amendment requires that a warrant be no broader than the probable cause on which it is based." (internal quotation marks omitted)).

B.

Andrews also challenges the district court's application of *Leon*'s good faith exception on the basis that Detective Gallegos either intentionally or recklessly misled the magistrate by omitting from his supporting affidavit that the original destination of the FedEx package was Apartment 7, 1528 Cashiers Lane, not Apartment 9 as implied in the supporting affidavit. *See Leon*, 468 U.S. at 923 (reliance on warrant unreasonable where magistrate "was misled by information . . . the affiant knew was false or would have known was false except for his reckless disregard of the truth").

Andrews contends that the omission of this information kept the magistrate from understanding that the address law enforcement wished to search did not match either the street address or the apartment number of the original delivery address. Had he known this, Andrews argues, the magistrate would have concluded that there was no link between the premises to be searched and the drugs and, therefore, no probable cause.

We disagree. In challenging a search warrant on the theory that the officer's affidavit "omit[ted] material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading," *United States v. Colkley*, 899 F.2d 297, 300 (4th. Cir. 1990) (internal quotation marks omitted), the defendant must show (1) that the officer deliberately or recklessly omitted the information at issue and (2) that the inclusion of this information would have defeated probable cause, *see id.* at 301.

First, as the district court implied, there is nothing in the record to indicate that the omission of the original FedEx delivery address was the result of intentional or reckless conduct. On the contrary, the record reflects that Officer Gallegos was diligent and careful in ensuring that the proper address was searched. FedEx changed the official delivery address

based on a telephone request from the purported shipper; Officer Gallegos reasonably relied on the information supplied to him by FedEx, much in the same way he would have relied on the FedEx label affixed to the package in the absence of a change order. Detective Gallegos obtained paper work from FedEx relating to the change of address and sent officers to confirm the location of the altered delivery address. And, since the *shipper* called FedEx to change the apartment number, it was reasonable for Detective Gallegos to assume the "Apartment 9" portion of the address was correct and to focus on the apartment number rather than the street address in determining the likely destination of the drugs.

Moreover, Detective Gallegos, while under oath, explained to the magistrate why he did not believe that 1528 Cashiers Lane was the intended destination for the package containing drugs, including the fact that Apartment 9, 1528 Cashiers Lane was not a valid address and the fact that no one by the name of "Crystal Rhodes," the purported recipient of the drugs, lived at Apartment 7, 1528 Cashiers Lane, which was a valid address. That Detective Gallegos would mention Apartment 7 suggests that he was not attempting to mislead or hide contradictory facts from the magistrate.

Thus, the district court rightly found that "once FedEx officially changed the delivery address to 1528 Cashiers Lane, Apartment 9, that address became the official delivery location for the package." J.A. 109. In light of these undisputed facts, we fail to see any evidence that Detective Gallegos recklessly disregarded the truth or intentionally misled the magistrate.

Second, we agree that the information regarding Apartment 7 was not material to the probable cause determination. *See Colkley*, 899 F.2d at 300-01. Andrews argues that the magistrate, if presented with the full history of the delivery addresses, "might well have wondered whether 1528 Cashiers Lane, number 7 was the intended address all along." Brief of

Appellant at 31. Unfortunately for Andrews, this argument is not only speculative but it runs contrary to common sense. Because the shipper specifically requested that the delivery address be changed from Apartment 7 to Apartment 9, we fail to see how the magistrate could reasonably conclude, against the totality of the facts before him, that the intended delivery address was still Apartment 7. We agree with the district court that the original address is not significant for purposes of the probable cause calculus in view of the acceptance of the FedEx package by Andrews as well as all of the facts previously discussed that link Andrews' house to the package. Accordingly, we reject Andrews' contention that the omitted facts are material, since "an omission must do more than potentially affect the probable cause determination: it must be necessary to the finding of probable cause." *Colkley*, 899 F.2d at 301.

### C.

Finally, we reject Andrews' argument that the good faith exception cannot apply here because the issuing magistrate did not fulfill his intended role as a neutral and detached judicial officer but rather functioned merely as a rubber stamp for Detective Gallegos' application for a search warrant. *See Bynum*, 293 F.3d at 195. Andrews suggests that Detective Gallegos failed to present any facts to the magistrate that would connect Andrews' home to the drug-related activity in question, save for the fact that he lived in an apartment number 9. Andrews contends that the magistrate abandoned its judicial role because, without a sufficient factual basis, the issuance of a search warrant is a "rubber stamp" of approval on the officer's opinion of probable cause.

Essentially, this argument recasts Andrews' argument that no officer could reasonably rely on the warrant because there was an insufficient basis for a probable cause finding—an argument we have already rejected. *See, e.g.*, *United States v. McKneely*, 6 F.3d 1447, 1455-56 (10th Cir. 1993) (rejecting

the argument that the magistrate abandoned its neutral role simply because the warrant was insufficient); *United States v. Sager*, 743 F.2d 1261, 1267 (8th Cir. 1984) (rejecting similar argument as "only another way of phrasing the argument that no one who relied upon the affidavit could have been objectively reasonable" which the court had "already rejected"). Andrews has not identified any specific instances demonstrating that the issuing magistrate was not neutral or detached. Accordingly, we dispense with this argument as well.

### III.

For the foregoing reasons, we affirm the decision of the district court denying Andrews' motion to suppress.

*AFFIRMED*