Affirmed by published opinion. Judge AGEE wrote the majority opinion, in which Judge WYNN joined. Judge NIEMEYER wrote a dissenting opinion.
*171 OPINION
AGEE, Circuit Judge:
The Government appeals from the district court’s order granting Travis Gaines’ motion to suppress a firearm seized by police following an unlawful stop of a vehicle in which he was a passenger. The district court suppressed the gun on the basis that it was “fruit of the poisonous tree,” while the Government maintains that intervening events, ie., acts of assault and resisting arrest committed by Gaines, purged the illegality of the stop and rendered the firearm admissible. For the following reasons, we affirm the district court’s order granting the motion to suppress.
I.
On the afternoon of January 26, 2010, Baltimore City police officers Jimmy Shetterly, Frank Schneider, and Manuel Moro were in a marked police vehicle on patrol in the vicinity of Mosher Street and Pennsylvania Avenue, in Baltimore. The officers observed a white Ford Crown Victoria approaching Mosher Street on Pennsylvania Avenue from the opposite direction. Officer Moro, who was seated in the rear compartment of the police vehicle, later testified that as the Crown Victoria neared the Mosher Street intersection, he observed (from the other side of the intersection) a crack in the Crown Victoria’s windshield and informed the other officers.
Officers Schneider and Shetterly testified that after the Crown Victoria turned right onto Mosher Street, they followed in the police vehicle and also observed the crack in the windshield. The police activated their vehicle’s emergency lights and pulled over the Crown Victoria. In the course of the ensuing vehicle stop, Officer Shetterly observed Gaines (who was a passenger in the rear of the Crown Victoria) moving around in his seat and trying to climb over the front seats, despite commands to stop. Officer Shetterly then ordered Gaines to exit the vehicle and immediately began to pat him down.
As Officer Shetterly began to pat down Gaines in the area of Gaines’ waistband, the officer testified that “[a]s I was reaching with my right hand, I could feel the trigger guard and the handle of a firearm. At that time, I yelled ‘gun’ very loudly to alert the officers of the other present danger.” (J.A. 39.) Gaines then assaulted Shetterly, striking him in the face with his elbow. As Gaines turned to flee, Officer Shetterly clearly observed a silver firearm with a black handle in Gaines’ waistband. Gaines then punched Officer Schneider before he was subdued by the officers.
Officers Schneider and Shetterly pushed Gaines into the open trunk of the Crown Victoria as he continued to struggle. When the officers were eventually able to handcuff Gaines and pull him from the trunk, Officer Shetterly observed the firearm fall from Gaines’ waistband into the trunk. The police placed Gaines under arrest and seized the firearm, a .380 semiautomatic pistol.[1]
A federal grand jury in United States District Court for The District of Maryland indicted Gaines on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Gaines moved to suppress the firearm on the grounds that the stop and subsequent search of his person violated the Fourth Amendment.
At a hearing on the motion to suppress, the district court heard testimony from Officers Shetterly, Schneider, and Moro *172 who testified as to their observation of the cracked windshield and the traffic stop. Officer Shetterly testified that after he observed Gaines making furtive movements in the back seat of the Crown Victoria, he ordered Gaines out of the car and conducted a pat down. He testified that as he reached the waistband he “could feel the trigger guard and the handle of a firearm,” and “yelled ‘gun.’ ” (J.A. 39.)
After extensive argument by both parties, the district court granted Gaines’ motion to suppress. The court initially concluded that the traffic stop was not supported by reasonable suspicion and was accordingly unlawful. The court found “as a factual matter that the officers could not have seen the very slight crack in the lower right portion of the Crown Victoria’s windshield.” (J.A. 279.) Important to the court’s decision was its belief that Officer Moro could not see the crack from the rear seat of the police vehicle, past the two officers in the front seat, across an intersection, through the tinted rear window of the Crown Victoria as the Crown Victoria turned right, away from the officer. For the same reasons, the court declined to credit the testimony of Officers Shetterly and Schneider that they also saw the crack in the Crown Victoria’s windshield. Thus, the court determined, the Government failed to establish that the traffic stop was based on reasonable and articulable suspicion of unlawful conduct. On appeal, the Government concedes the traffic stop and consequent pat down of Gaines were unlawful.
The district court then held that Gaines’ assault of Officers Shetterly and Schneider did not purge the taint of the unlawful stop in a manner sufficient to allow the gun to be admitted into evidence against Gaines. Critical to the court’s analysis was the “clear and undisputed” sequence of events that led to the seizure of the firearm: Gaines was ordered out of the vehicle and patted down, the gun was discovered, and only then did Gaines attack the officers.[2] (J.A. 282.) The court found dispositive the fact that the firearm was discovered by Officer Shetterly as a direct result of the illegal stop, and not as a result of Gaines’ subsequent illegal behavior assaulting the officers. The district court accordingly granted Gaines’ motion to suppress.
The Government moved for reconsideration, which the district court denied. The Government noted a timely interlocutory appeal of the district court’s orders granting the motion to suppress and denying reconsideration. We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3731 para. 2 (extending jurisdiction to the courts of appeals over interlocutory appeals filed by the United States “from a decision or order of a district court suppressing or excluding evidence”).[3]
II.
On appeal, the Government argues that the taint of the unlawful stop was purged when Gaines assaulted Officers Shetterly and Schneider. Because the Government does not challenge the district court’s conclusion that the initial stop and patdown was unlawful, we assume that it was. *173 Nevertheless, the Government, relying heavily on United States v. Sprinkle, 106 F.3d 613 (4th Cir.1997), claims that the firearm is admissible notwithstanding the illegality of the traffic stop. The thrust of the Government’s argument is that the assault broke the chain of causation resulting from the illegal stop. As a result, the Government contends that because the firearm had not been physically seized when the assault took place, it could later be lawfully seized pursuant to a valid arrest for the assault upon the police officers and introduced as evidence against Gaines on the firearm charge.
A.
On appeal of the district court’s grant of a motion to suppress, we review the court’s findings of fact for clear error and its legal conclusions de novo. United States v. Jones, 356 F.3d 529, 533 (4th Cir.2004).
B.
The Fourth Amendment protects the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]” U.S. Const, amend. IV. When evidence is discovered as a result of a Fourth Amendment violation, it is, generally speaking, subject to suppression under the exclusionary rule. United States v. Andrews, 577 F.3d 231, 235 (4th Cir.2009). Not all evidence discovered as a result of a Fourth Amendment violation, though, is “fruit of the poisonous tree” and necessarily inadmissible at trial. Evidence derived from an illegal search may be admissible depending upon “whether, granting establishment of the primary illegality the evidence to which the instant objection is made has been come at by exploitation of that illegality, or instead by means sufficiently distinguishable to be purged of the primary taint.” Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quotation marks and citation omitted).
Thus, where there is sufficient attenuation between the unlawful search and the acquisition of evidence, the “taint” of that unlawful search is purged. To determine whether the derivative evidence has been purged of the taint of the unlawful search, we consider several factors, including: (1) the amount of time between the illegal action and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The question presented in this case is whether Gaines’ commission of a crime after discovery of the gun by police, but before its seizure, is an intervening circumstance sufficient to purge the taint of the admitted illegal search. Under the facts of this case, we conclude that it is not such an intervening circumstance.[4]
In Sprinkle, cited extensively by the parties, we analyzed similar (but not identical) facts and articulated what we described as “an exception to the exclusionary rule of ‘fruit of the poisonous tree’ doctrine.” 106 F.3d at 619. In that case, police conducted an unlawful stop of a car in which Sprinkle was a passenger. Id. at 616. Sprinkle stepped out of the car, and *174 officers began to conduct a pat down of his person. Id. Before any evidence was discovered in the pat down, Sprinkle pushed the officer away and took flight. Id. After running a short distance, Sprinkle pulled a handgun from his pants, continued to run, and eventually fired a shot at the pursuing officer. Id. Shortly thereafter, he was apprehended and the gun was seized. Id.
Facing charges for being a felon in possession of a firearm, Sprinkle sought suppression of the weapon. The district court granted Sprinkle’s motion to suppress the firearm, and the Government appealed. We reversed the district court, holding that “[i]f a suspect’s response to an illegal stop is itself a new, distinct crime, then the police constitutionally may arrest the suspect for that crime.” Id. at 619 (internal quotation marks, citation, and alteration omitted). In finding the exclusionary rule inapplicable, we explained that “[bjecause the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible.” Id.
In Sprinkle, we recognized the “strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest.” Id. “[A] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct.” Id. (quoting United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir.1982)).
The Government argues in this case that, pursuant to Sprinkle, Gaines’ own illegal actions purged the taint of the unlawful traffic stop. Gaines, on the other hand, emphasizes the Government’s repeated concession in the district court that the firearm was discovered by the officers before any unlawful activity was committed by Gaines. Accordingly, in Gaines’ view, the discovery of the gun cannot be attenuated from the unlawful stop.
We agree with Gaines that a proper reading of Sprinkle does not support the Government’s position. In that case, the contested evidence (the firearm) was only discovered after the defendant engaged in illegal activity subsequent to an earlier unlawful stop. See id. at 619 (“[w]hen Sprinkle drew and fired his gun at the officer, he committed a new crime that was distinct from any crime he might have been suspected of at the time of the initial stop.”). The illegal act in Sprinkle broke the causal chain between the unlawful stop and the discovery of the firearm. By contrast, in this case, the causal chain remains intact. Gaines’ subsequent criminal conduct cannot constitute an intervening event because it took place after the discovery of the firearm.
The Government, however, places much emphasis on our statement in Sprinkle that “[b]ecause the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible.” Id. at 619. Because the firearm was not physically seized until after Gaines struck the officers, the Government argues, it may be admitted as properly seized pursuant to a lawful arrest.
This argument, though, fails to account for the fact that the gun was discovered prior to Gaines’ acts of assault. Although the Government would have us hold that the seizure of the firearm, rather than its discovery by police, is the critical act for assessing whether an intervening event has taken place, that position lacks support in law. In fact, other than the aforementioned language in Sprinkle, the Government has not cited any case for the proposition that the seizure of the evidence is legally more significant than the discovery *175 of the evidence when the two acts do not coincide.
Rather, the language found in the case-law seems to support Gaines’ position that, for purposes of the attenuation doctrine, the discovery of the evidence is the relevant event. See, e.g., Wong Sun, 371 U.S. at 487, 83 S.Ct. 407 (describing an exception to the exclusionary rule where “the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint”) (emphasis added) (internal quotation marks and citation omitted); United States v. Clark, 891 F.2d 501, 505 (4th Cir.1989) (“evidence challenged on a suppression motion will not be excluded unless a causal relationship exists between that particular [Fourth Amendment] violation and the discovery of the evidence sought to be excluded”) (emphasis added) (citing Wong Sun, 371 U.S. at 487, 83 S.Ct. 407); United States v. Reed, 349 F.3d 457, 464 (7th Cir.2003) (“The type of intervening events that serve to attenuate [police] misconduct are those that sever the causal connection between the illegal arrest and the discovery of the evidence.”) (emphasis added).
The Supreme Court has recognized the increased privacy interest attaching to protection from unlawful searches as compared to unlawful seizures.
A seizure affects only the person’s possessory interests; a search affects a person’s privacy interests. Recognizing the generally less intrusive nature of a seizure, the Court has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been held impermissible.
Segura v. United States, 468 U.S. 796, 806, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (internal citations omitted).
Accordingly, we have little difficulty concluding that where, as here, the discovery of the challenged evidence follows an unlawful search, but precedes an independent criminal act on the part of the defendant, that criminal act is not an intervening event for the purpose of determining whether the “taint” of the unlawful police action is purged.
Finally, we note that our holding finds support in two recently decided cases from other courts of appeals. In United States v. Camacho, 661 F.3d 718 (1st Cir.2011), the First Circuit found suppression was warranted in a factual situation similar to that presented here. In that case, police officers unlawfully detained Camacho as one officer “tapped” Camacho’s waist with an open hand, felt a gun, and yelled “gun.” Id. at 722. A brief struggle ensued, after which Camacho was arrested and the gun seized by police. Id. The First Circuit concluded that Camacho’s struggle with police did not attenuate the taint caused by his illegal seizure. The court noted that, despite the fact that the gun was seized after a lawful search incident to Camacho’s arrest, “[t]he gun at issue here was not discovered in [such a search]____ Officer Sousa conducted the frisk — the search that first discovered the gun — before Camacho shoved him and before Camacho was arrested.” Id. at 730 (emphasis in original). Thus, the court was able to conclude that “Camacho’s ‘intervening’ crimes were not, in fact, intervening and thus could not purge the taint of the prior illegal stop.” Id. at 731.
Similarly, in United States v. Beau-champ, 659 F.3d 560 (6th Cir.2011), the Sixth Circuit held that evidence that was discovered during an unlawful search was subject to suppression, notwithstanding *176 the fact that the defendant then attempted to flee and was arrested before the evidence was actually seized. There, officers conducted a Terry[5] stop of a defendant that the court of appeals later determined lacked reasonable suspicion and was thus unlawful. 659 F.3d at 571. The police searched Beauchamp and discovered $1300 in cash and a plastic baggie containing narcotics before Beauchamp began to struggle and attempt to flee. Id. at 574.
In reversing the district court’s denial of Beauchamp’s motion to suppress, the Sixth Circuit found dispositive the fact that the police discovered the evidence before the subsequent illegal action (the attempted flight). Id. The court concluded that “Beauchamp’s brief struggle cannot serve as an intervening circumstance because it does not come between the illegal seizure [of Beauchamp] and the discovery of the evidence; there is no break in the chain.” Id.
Just as in Camacho and Beauchamp, there was no intervening circumstance in this case to sever the causal connection between the unlawful search and the discovery of the evidence. Police discovered the firearm on Gaines’ person before his commission of another crime. Consistent with those cases, and with Sprinkle, we hold that Gaines’ act of assault did not purge the taint of the unlawful stop, and the district court properly granted the motion to suppress.
III.
For the aforementioned reasons, we affirm the order of the district court granting Gaines’ motion to suppress.

AFFIRMED.

. In addition to the charges that form the basis for this appeal, Gaines was prosecuted in state court in Maryland for second degree assault of the police officers.

. The Government admitted to this course of events during the hearing on Gaines' motion to suppress.
THE COURT: ... But here it's undisputed that Officer Shetterly found the gun and yelled ‘gun’ before the defendant, Mr. Gaines, did anything.
[AUSA]: Yes. I agree, Your Honor.
(J.A. 248.)

. Pursuant to § 3731 para. 2, the Government has certified that this “appeal is not taken for the purpose of delay and that the [suppressed] evidence is a substantial proof of a fact material in the proceeding.” (J.A. 315.)

. Because we conclude there is no intervening circumstance, it is unnecessary to evaluate the other Brown factors. Were we to do so, however, it is clear that the very short time between the unlawful search and the discovery of the evidence does not tend to dissipate the taint. Moreover, while the district court made no findings regarding the purpose and flagrancy of the official misconduct, we see nothing in the record tending to show that the officers' conduct militates in favor of attenuation of the taint.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).