**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 12-4627**

---

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

NAARL JOSEPH RICHARD, a/k/a Noel H. Richard, a/k/a Richard
Earl, a/k/a Richard Narrl,

             Defendant - Appellant.

---

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, Senior
District Judge.  (2:09-cr-00992-PMD-1)

---

Argued:  May 17, 2013                    Decided:  June 13, 2013

---

Before TRAXLER, Chief Judge, KING, Circuit Judge, and HAMILTON,
Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** G. Wells Dickson, Jr., WELLS DICKSON, PA, Kingstree,
South Carolina, for Appellant.  Nathan S. Williams, OFFICE OF
THE UNITED STATES ATTORNEY, Charleston, South Carolina, for
Appellee.  **ON BRIEF:** William N. Nettles, United States Attorney,
Columbia, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Naarl Joseph Richard appeals his conviction for possession of heroin with the intent to distribute, 21 U.S.C. § 841(a)(1). We affirm.

I

A

In the Spring of 2009, detectives from the North Charleston Police Department (NCPD) were investigating drug sales in North Charleston, South Carolina. One of the persons under investigation was Richard.

While conducting surveillance of an apartment that the detectives suspected was associated with drug trafficking, the detectives observed Richard leaving the apartment and entering a white Pontiac Gran Prix (the Car). On May 6, 2009, Detective Jason Roy placed a GPS tracking device underneath the rear bumper of the Car, while the Car was parked in a public place. The placement of the GPS tracking device enabled Detective Roy to monitor the Car's whereabouts on a laptop computer.

On May 31, 2009, the Car left North Charleston at approximately 1:33 a.m. and arrived in Newark, New Jersey at approximately 2:30 p.m. that same day. The Car remained in Newark a little over an hour before departing at 3:49 p.m. At approximately 2:30 a.m. on June 1, 2009, the Car entered South

2

Carolina on Interstate 95. Based on the Car's travel itinerary, Detective Roy and another NCPD detective, Detective Dan Bailey, decided to conduct a traffic stop of the Car as it entered the North Charleston area on Interstate 26. As the Car was leaving the interstate, the detectives saw the driver of the Car change lanes without using a turn signal, a traffic violation under South Carolina law. Having witnessed this traffic violation, the detectives initiated a traffic stop.

As the detectives approached the Car, Richard was in the passenger's seat. His girlfriend, Katia Coney, was in the driver's seat. Richard appeared nervous. He was sweating, and his legs were shaking. Richard and Coney were asked to step out of the Car, which they did. The detectives questioned Richard and Coney individually concerning their travel itinerary, and they gave inconsistent accounts concerning where they had been.

While Detectives Roy and Bailey were speaking with Richard and Coney, an NCPD Canine Officer, Officer Anthony Danielle, arrived on the scene. During a perimeter canine sniff of the vehicle, the drug detection dog (Canine Foster) positively alerted to the exterior driver's side door. Officer Danielle then opened the driver's door, allowing Canine Foster to enter the Car. Canine Foster then alerted on the Car's center console and on its rear passenger floorboards.

3

By this time, Detective Daniel Prichard had arrived on the scene and was advised of Canine Foster's positive alerts and the inconsistent accounts given by Richard and Coney. Upon searching the Car, Detective Prichard noticed that the passenger's side rocker panel was loose. After a search of the area behind the panel, Detective Prichard recovered five glassine bags, each containing light brown powder. This powder field-tested positive for heroin.

A search warrant was then obtained for the Car. During that search, a secret compartment, operated by a hydraulic piston, was discovered under the center console of the Car. Inside this compartment, the officers found 1,000 glassine bags containing heroin, plastic bags, a passport in Richard's name, and a rubber stamp. The total amount of heroin recovered from the Car that day was 36.2 grams.

B

On September 8, 2009, a grand jury sitting in the District of South Carolina returned a one-count indictment charging Richard with possession of heroin with the intent to distribute, id. § 841(a)(1). Prior to trial, Richard filed a motion to suppress, which the district court denied.

Richard's jury trial began on October 3, 2011 and concluded on October 5, 2011. A guilty verdict was returned by the jury. Prior to his sentencing, Richard filed a motion to reconsider

4

his motion to suppress, and, also, a motion for a new trial, based upon the Supreme Court's January 23, 2012 decision in United States v. Jones, 132 S. Ct. 945 (2012), which held that the installation of a GPS tracking device on a target's vehicle, and its subsequent use, without a valid warrant, constituted an unlawful search under the Fourth Amendment. Id. at 949-54. The district court granted Richard's motion for a new trial, ordering that any evidence relating to the use of the GPS tracking device be suppressed. However, the district court denied in part the motion to suppress, concluding that suppression of the heroin found in the Car was not warranted. The district court reasoned that a "legal traffic stop based on probable cause that a new, distinct crime occurred–the failure to use the turn signal–purged the taint of the illegal use of the GPS." (J.A. 276).

Richard's retrial before a new jury began on July 9, 2012 and concluded on July 10, 2012. No reference to the use of the GPS tracking device was made, and no evidence of any data from the GPS tracking device was presented to the jury. At the conclusion of the trial, Richard was found guilty. On August 9, 2012, Richard was sentenced to 262 months' imprisonment. He filed a timely notice of appeal.

5

Richard first contends that the district court erred when it denied the motion to suppress he filed while awaiting sentencing following the conclusion of his first trial. When considering a district court's denial of a motion to suppress, we review the district court's factual findings for clear error and legal conclusions de novo. United States v. Lewis, 606 F.3d 193, 197 (4th Cir. 2010). We also construe the evidence in the light most favorable to the government, as the prevailing party below. Id.

Prior to Richard's second trial, the district court held that "[a]ll of the evidence relating to [Richard's] travelling to New Jersey and other evidence gathered using the GPS tracking device is hereby excluded, but the evidence uncovered subsequent to the legal traffic stop is not suppressed because the new crime purged the taint of the illegal GPS search." (J.A. 276-77). Richard contends that, because the traffic stop would not have taken place but for the information illegally obtained by virtue of the placement of the GPS, including information concerning the Car's location on May 31 and June 1, 2009, the district court erred when it determined that the improper lane change constituted a new crime that purged the taint of the illegal search.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, evidence discovered as a result of a Fourth Amendment violation is subject to suppression under the exclusionary rule. United States v. Andrews, 577 F.3d 231, 235 (4th Cir. 2009). However, not all evidence discovered as a result of a Fourth Amendment violation is "fruit of the poisonous tree" and necessarily inadmissible at trial. Evidence derived from an illegal search may be admissible depending upon "whether, granting establishment of the primary illegality, the evidence to which [the] instant objection is made has been come at by exploitation of that illegality, or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488 (1963) (citation and internal quotation marks omitted).

"Thus, where there is sufficient attenuation between the unlawful search and the acquisition of evidence, the 'taint' of that unlawful search is purged." United States v. Gaines, 668 F.3d 170, 173 (4th Cir. 2012). In determining whether the taint of the illegal search is purged, we evaluate several factors, including: (1) the amount of time between the illegal action and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official

7

misconduct.  Id.; see also Brown v. Illinois, 422 U.S. 590, 603–04 (1975).  In this case, we must determine whether the improper lane change is an intervening circumstance sufficient to purge the taint of an illegal search.  For purposes of our discussion, we accept the government's apparent concession that the illegal search continued until the NCPD detectives witnessed the improper lane change.

In United States v. Sprinkle, 106 F.3d 613 (4th Cir. 1997), the police stopped the defendant for what they mistakenly believed was reasonable suspicion of criminal activity.  Id. at 616.  When the police told the defendant they were going to frisk him for weapons, he fled and later pulled a handgun from his pants and fired at the pursuing officers.  Id.  The district court held that the firearm was the fruit of an unlawful stop, and, thus, the firearm was inadmissible at trial.  Id.

On appeal, we reversed, holding that "[i]f a suspect's response to an illegal stop is itself a new, distinct crime, then the police constitutionally may arrest the suspect for that crime."  Id. at 619 (citation, alteration, and internal quotation marks).  In so holding, we noted that, "[b]ecause the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible."  Id.

In Sprinkle, we recognized the "strong policy reason for holding that a new and distinct crime, even if triggered by an

8

illegal stop, is a sufficient intervening event to provide independent grounds for arrest." Id. "[A] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." Id. (quoting United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir. 1982) (internal quotation mark omitted)).

In this case, the government argues that, pursuant to Sprinkle, the illegal lane change purged the taint of the unlawful search. Richard argues that the taint was not so purged. We agree with the government's position.

The stop of the Car was the result of Coney's improper lane change. This act gave the NCPD detectives probable cause to stop the Car. United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008) (noting that a traffic violation "provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop"). A lawful traffic stop justifies detaining the vehicle's occupants for the time necessary to request a driver's license and vehicle registration, run a computer check, and issue a citation. United States v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011). During the stop, an officer may briefly inquire into unrelated matters, but may not definitively abandon the prosecution of the

9

traffic stop and embark on another sustained course of investigation absent additional justification. Id. at 507-08. The officer may take other actions that do not constitute a search within the meaning of the Fourth Amendment, such as conducting a perimeter canine sniff of the vehicle, Illinois v. Caballes, 543 U.S. 405, 409 (2005), but again only "so long as those inquiries [or other actions] do not measurably extend the duration of the stop." Arizona v. Johnson, 555 U.S. 323, 333 (2009).

In this case, the perimeter canine sniff occurred while the detectives were resolving the inconsistencies given by Richard and Coney. Canine Foster alerted on the perimeter of the Car, which provided probable cause to search the car. Branch, 537 F.3d at 340 n.2 (positive alert from the canine unit was sufficient to provide probable cause to search defendant's car). Heroin initially was found pursuant to a warrantless probable cause search and additionally found pursuant to a search warrant. Under the circumstances of this case, although the time between the illegal search and the discovery of the heroin was not substantial, the improper lane change was an intervening circumstance which purged the taint, especially since the conduct of the detectives was not flagrant.

In reaching our decision, we make two observations. First, a contrary result would run afoul of our decision in Sprinkle

10

because suppressing the heroin in this case would "virtually immunize" defendants who commit crimes following any police misconduct. Sprinkle, 106 F.3d at 619 (citation and internal quotation marks omitted). Second, our decision is consistent with our recent decision in Gaines. In that case, the officers illegally stopped the defendant. 668 F.3d at 171. During a subsequent illegal pat-down of the defendant, one of the officers discovered a handgun. Id. The defendant then assaulted the two police officers. Id. The defendant was indicted on one count of possession of a firearm by a convicted felon. Id. Prior to trial, the defendant moved to suppress the firearm because the stop and search of his person violated the Fourth Amendment. Id. The government argued that, pursuant to Sprinkle, the taint of the unlawful stop was purged when defendant assaulted the officers. Id. at 174. However, we distinguished Sprinkle by noting that the firearm in that case "was only discovered after the defendant engaged in illegal activity subsequent to an earlier unlawful stop." Id. In Gaines, the discovery of the firearm took place before the defendant's subsequent criminal conduct; therefore, the subsequent criminal conduct could not constitute an intervening event for purposes of suppressing the firearm. Id.

In this case, similar to Sprinkle, there was an intervening circumstance, namely the traffic violation, that severed the

11

causal connection between the unlawful search and the discovery of the evidence. The detectives discovered the heroin after another crime was committed. Consistent with Sprinkle and Gaines, we hold that the traffic violation purged the taint of the unlawful search, and that the actions of the detectives following the stop were reasonable under the Fourth Amendment. Accordingly, the district court did not err when it denied the motion to suppress Richard filed while awaiting sentencing following the conclusion of his first trial.

### III

Richard also challenges the 262-month sentence imposed by the district court. We review a sentence for reasonableness, applying a deferential abuse-of-discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). In conducting this review, we must first ensure that the district court committed no significant procedural error, such as improper calculation of the Sentencing Guidelines range, insufficient consideration of the 18 U.S.C. § 3553(a) factors and the parties' sentencing arguments, and inadequate explanation of the sentence imposed. United States v. Lynn, 592 F.3d 572, 575 (4th Cir. 2010). If the sentence is free from significant procedural error, we also review the substantive reasonableness of the sentence. Id. The sentence imposed must be "sufficient, but not greater than

12

necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). A within-Guidelines sentence is presumed reasonable on appeal, and the defendant bears the burden to rebut the presumption by demonstrating that the sentence is unreasonable when measured against the § 3553(a) factors. United States v. Montes-Pineda, 445 F.3d 375, 379 (4th Cir. 2006).

A

Richard first challenges the procedural reasonableness of his sentence, arguing that the district court erred when it designated him as a career offender.[*] Pursuant to United States Sentencing Commission, Guidelines Manual (USSG), § 4B1.1(a), a defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a).

---

[*] As a career offender, Richard was placed at an Offense Level 34, Criminal History Category VI, which produced a sentencing range of 262 to 327 months' imprisonment. Without the career offender designation, Richard would have been placed at an Offense Level 20, Criminal History Category VI, which would have produced a sentencing range of 70 to 87 months' imprisonment.

13

In designating Richard a career offender, the probation officer did not specify which prior convictions satisfied the dictates of USSG § 4B1.1(a). Instead, the probation officer stated that "[a]s is shown in Part B (Criminal History) above, the defendant has been convicted of at least two (2) prior felony convictions of either a crime of violence or a controlled substance offense." (J.A. 539). The district court adopted the Guidelines calculations of the probation officer.

On appeal, Richard takes issue with three prior convictions in the PSR. First is his prior conviction for attempted murder under New Jersey law. This offense occurred on August 3, 1992, and Richard was arrested on October 7, 1992. He was sentenced on April 26, 1993. The second and third convictions are for possession of a controlled dangerous substance under New Jersey law. The offenses occurred on different days, one on February 24, 2001, the other on June 15, 2001. Richard was arrested on the occurrence date for these offenses, and he was sentenced on the same day for these offenses, July 12, 2002.

With respect to the attempted murder conviction, Richard argues that the conviction occurred more than fifteen years prior to the instant offense and should not count as a crime of violence. See USSG § 4A1.2(e)(1) (setting forth fifteen-year operative window). Richard's instant offense occurred on June 1, 2009, making the fifteen-year operative window for prior

convictions June 1, 1994. On October 7, 1992, Richard was arrested for attempted murder, and he was sentenced to twelve years' imprisonment on April 26, 1993. Richard was paroled on December 24, 1997 and his supervision expired on July 25, 2000.

USSG § 4B1.2(c) provides that a "prior felony conviction" is measured by the date the conviction is established. Application Note 3 to USSG § 4B1.2 states that USSG § 4A1.2 applies to the counting of convictions under USSG § 4B1.1. This Guideline provides in pertinent part:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

USSG § 4A1.2(e)(1).

Because Richard was incarcerated within fifteen years of the commencement of the instant offense, his prior attempted murder conviction qualifies as a predicate offense pursuant to USSG § 4B1.1(a) and USSG § 4A1.2(e)(1).

Richard also takes issue with the two offenses for possession of a controlled dangerous substance. According to Richard, both convictions could not be used because he received concurrent sentences on the same day for these offenses.

15

Putting aside for the moment the fact that only one of these convictions is necessary to uphold Richard's designation as a career offender, both convictions qualify as predicate prior convictions.  Under USSG § 4A1.2(a)(2), "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)."  USSG § 4A1.2(a)(2).  Richard committed one possession of a controlled dangerous substance offense on February 24, 2001, and he was arrested on that same day for the offense.  He committed the second offense on June 15, 2001.  Because there was an intervening arrest between these two offenses, the convictions must be counted separately for purposes of determining whether Richard qualifies as a career offender.

B

Richard also challenges the substantive reasonableness of his sentence, arguing that he should have received a sentence significantly below the sentence imposed by the district court.  According to Richard, his designation as a career offender overstated the seriousness of his actual criminal history.  The district court considered this argument but rejected it, stating, "I'm looking at [the] Guidelines that tell me what I should do.  And I haven't heard anything from you, though you've

16

tried, that would take you outside those Guidelines." (J.A. 519).

Here, the district court adopted the extensive findings contained in the PSR, considered the § 3553(a) factors, provided a detailed individualized assessment, responded to defense counsel's argument for a below-Guidelines sentence, and clearly explained the imposed sentence. In our view, neither Richard nor the available record rebuts the presumption of reasonableness accorded his within-Guidelines sentence. Montes-Pineda, 445 F.3d at 379.

IV

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

17