**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4799**

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

BRIAN D . TERRY,

          Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph R. Goodwin, District Judge (2:16-cr-00175-1)

Argued: October 10, 2018                Decided: November 30, 2018

Before GREGORY, Chief Judge, MOTZ, and DIAZ, Circuit Judges

Reversed, vacated, and remanded by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Motz and Judge Diaz joined.

**ARGUED:** Lex A. Coleman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Meredith George Thomas, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Christian M. Capece, Federal Public Defender, Jonathan D. Byrne, Research & Writing Specialist, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Michael B. Stuart, United States Attorney, Charleston, West Virginia, W. Clinton Carte, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Huntington, West Virginia, for Appellee.

GREGORY, Chief Judge:

Brian D. Terry appeals his conviction for possession of methamphetamine with the intent to distribute. *See* 21 U.S.C. § 841(a)(1). Terry challenges the district court's denial of his motion to suppress evidence seized during a traffic stop. Drug task force agents effectuated the stop through the illegal use of a global positioning system ("GPS") search. The district court found the agents committed a flagrant constitutional violation but ultimately denied Terry's motion to suppress for lack of standing. For the reasons below, we conclude that Terry had standing and that the discovery of the evidence seized during the traffic stop was not sufficiently attenuated from the unlawful GPS search to purge the taint of the unlawful search. We therefore reverse the district court's order denying Terry's motion to suppress, vacate Terry's conviction, and remand for further proceedings consistent with this opinion.

I.

A.

The parties do not dispute the facts underlying Terry's motion to suppress. The Metropolitan Drug Enforcement Network Team ("MDENT"), a drug task force operating in Charleston, West Virginia, started investigating Terry when an officer found remnants of drugs in trash placed outside of a residence associated with Terry. From this evidence and other information, an MDENT agent acquired a search warrant for Terry's residence. On April 18, 2016, agents saw Terry leave his residence driving a gold Kia Optima and followed him to a local store. Once Terry had parked, Corporal D.C. Johnson

2

approached the Kia and smelled marijuana. After speaking with Corporal Johnson, Terry turned over a small amount of marijuana and Corporal Johnson searched the car. Nothing further of interest was found, and Corporal Johnson wrote Terry a misdemeanor citation for the marijuana Terry had turned over. While Terry was speaking with Corporal Johnson, another MDENT agent surreptitiously placed a GPS tracker onto the Kia even though none of the agents had obtained a warrant to do so.

Following the interaction with the MDENT agents in the parking lot, Terry went with the agents back to his residence and allowed them to search there, but no contraband or other incriminating evidence was found. Afterwards, Corporal Johnson obtained a warrant from a local magistrate to "ping" Terry's cellphone and to place the GPS tracker on the Kia—the same car on which the agents had placed a GPS tracker earlier that day. Corporal Johnson did not inform the issuing magistrate that MDENT agents had already placed the GPS tracker on the vehicle.

On April 20, 2016, two days after the warrantless GPS search began, the agents relied solely on the GPS data to track the car to Columbus, Ohio, where they suspected Terry traveled to obtain drugs. By that time, the police were no longer obtaining "ping" data from Terry's cellphone, suggesting that the phone was turned off or disconnected. After the car returned to West Virginia, the officers began to follow the Kia and determined through "pacing" that the car was speeding at five miles above the posted speed limit of 45 miles per hour. After confirming through GPS data that the car was in fact speeding, the officers pulled the Kia over. Tamara Moore, the owner of the Kia, was

3

driving at the time, and Terry was a passenger. Corporal Johnson wrote Moore a warning citation while another officer spoke with Terry. After the officer informed Corporal Johnson that he smelled marijuana, Corporal Johnson ordered Terry out of the car and performed a patdown of Terry. Johnson and the assisting officer discovered 195.5 grams of methamphetamine and 2.9 grams of marijuana on Terry's person.

B.

Based on the drugs seized during the traffic stop, Terry was charged with possession with intent to distribute an unspecified quantity of methamphetamine. Terry filed a motion to suppress the methamphetamine and any other evidence derived from the traffic stop, arguing that the placement of the GPS tracker without a warrant violated the Fourth Amendment. At the suppression hearing, Corporal Johnson testified that he knew a warrant was required to place the GPS tracking device on the Kia. He further admitted that MDENT had affixed GPS trackers to cars without first obtaining a warrant in other instances as well. Corporal Johnson confirmed that he had no way of following the Kia on April 20, 2016, other than through use of the GPS tracker.

Although the district court found that MDENT's conduct constituted a flagrant constitutional violation, it nevertheless denied Terry's motion to suppress on the basis of standing. The district court reasoned that Terry had a possessory interest in the Kia when the MDENT agent attached the GPS tracker to the car, because he was driving the Kia at that time. However, because Terry had relinquished control over the Kia on the day of the traffic stop, the district court concluded that Terry lacked standing to challenge the

4

GPS search of the Kia on that day. Terry filed a motion to reconsider the district court's ruling and submitted evidence that Terry regularly used the Kia and kept the Kia at his residence. The district court denied Terry's motion to reconsider.

Following the denial of the motion to suppress but before the district court ruled on Terry's motion for reconsideration, a federal grand jury returned a superseding indictment charging Terry with possession with intent to distribute 50 grams or more of methamphetamine. Terry filed a motion to dismiss the superseding indictment, which the district court denied. After trial, a jury convicted Terry of the offense charged in the superseding indictment. The district court sentenced Terry to a term of 156 months in prison, followed by a 5-year term of supervised release. Terry timely appeals his conviction.

## II.

In considering the denial of a motion to suppress, we review a district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Perkins*, 363 F.3d 317, 320 (4th Cir. 2004). We construe the evidence in the light most favorable to the Government. *Id.*

## III.

As an initial matter, Terry argues that the district court erred in finding that he did not have standing to challenge the MDENT agents' GPS search of the Kia. The Government concedes error on this point, and we agree. Terry has standing to move for

suppression of the evidence that resulted from the illegal GPS search, because he was the driver of the Kia when officers surreptitiously placed the GPS device on the vehicle on April 18, 2016. *See United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992) (holding that defendant, though not the owner of a vehicle, had standing to challenge the search of the vehicle where he was the driver and no evidence in the record tended to show that he was illegitimately in possession of the vehicle).

The district court's holding that Terry did not have standing to move for suppression of the evidence seized during the traffic stop on April 20, 2016, ignores the basic principle underlying the "fruit of the poisonous tree" doctrine: defendants may seek to suppress not only evidence obtained as a direct result of an illegal search but also evidence later discovered as a result of that search. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016); *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007). Having found that Terry has standing to challenge the warrantless GPS search, we now turn to the question of whether the evidence later discovered as a result of that search should have been suppressed as fruit of the poisonous tree.

In general, evidence discovered as a result of a Fourth Amendment violation is subject to suppression under the exclusionary rule. *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009). However, not all such evidence is inadmissible. *Oscar-Torres*, 507 F.3d at 227. Evidence derived from an illegal search may be admissible depending upon "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by

6

means sufficiently distinguishable to be purged of the primary taint." *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). "Thus, where there is sufficient attenuation between the unlawful search and the acquisition of evidence, the 'taint' of that unlawful search is purged." *United States v. Gaines*, 668 F.3d 170, 173 (4th Cir. 2012).

In determining whether the taint of the illegal search is purged, we evaluate the three factors articulated in *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). First, we look to the "temporal proximity" between the unconstitutional conduct and the discovery of the evidence to determine how closely the discovery of the evidence followed the unconstitutional search. *Id.* at 603. Second, we consider the presence of intervening circumstances. *Id.* at 603–04. Third and "particularly" significant, we examine "the purpose and flagrancy of the official misconduct." *Id.* at 604; *see also Strieff*, 136 S. Ct. at 2062; *Gaines*, 668 F.3d at 173. "Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Strieff*, 136 S. Ct. at 2061 (internal citation and quotation marks omitted).

In this case, we must determine whether there is sufficient attenuation between the unlawful GPS search and the discovery of the drugs. The government argues that the intervening act of speeding purged the taint of the warrantless GPS search. Terry, by contrast, argues that the taint of the warrantless search was not purged, especially given

7

the flagrancy of the constitutional violation, and that the evidence should be suppressed. We agree with Terry.

The attenuation factors set forth by the Supreme Court in *Brown v. Illinois* strongly favor suppression here. First, as to temporal proximity, a mere two days passed between the unlawful placement of the GPS tracker and the discovery of the evidence— an insubstantial amount of time, as the Government concedes. *See Strieff*, 136 S. Ct. at 2062 ("Our precedents have declined to find that this factor favors attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." (internal citation omitted)); *accord United States v. Najjar*, 300 F.3d 466, 478 (4th Cir. 2002) (finding a period of weeks to be an insubstantial amount of time in the context of the attenuation analysis).

Second, even if the illegal conduct in this case—driving five miles above the speed limit—was an intervening circumstance, this would favor the Government only slightly. The Government admits that the agents used the illegally obtained GPS data to confirm the speed of the Kia after first "pacing" the vehicle, calling into question whether the agents had probable cause for the traffic stop absent the unlawful GPS search. We can assume without deciding that the agents independently had probable cause, such that the speeding infraction constituted an intervening circumstance that was unconnected with the GPS search. Regardless, the other attenuation factors substantially outweigh this minor infraction.

Third, and "particularly" important, the constitutional violation here was flagrant. The exclusionary rule exists to deter police misconduct, and the third attenuation factor "reflects that rationale by favoring exclusion only when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant." *Strieff*, 136 S. Ct. at 2063. The undisputed evidence here amply supports the district court's conclusion that the agents' misconduct was not simply the result of mistake or ignorance of the law but instead constituted a flagrant disregard for the well-established warrant requirement set forth by the Supreme Court in *United States v. Jones*. *See* 565 U.S. 400, 404 (2012) (holding installation of a tracking device on vehicle to be a search under the Fourth Amendment). Indeed, Corporal Johnson testified that he knew a warrant was required for the tracking device when he placed it on the Kia, and despite this knowledge, he failed to inform the magistrate that he had already placed the GPS tracker before applying for the warrant—a practice that had occurred in other cases. The exclusionary rule exists to deter exactly this type of official misconduct.

The agents' purposeful disregard for the warrant requirement in this case renders wholly unavailing the government's attempts to reframe the agents' misconduct as justified by exigency or mere mistake. The flagrancy of the official misconduct also readily distinguishes this case from the unpublished decision cited by the Government in support of its attenuation argument, *United States v. Richard*, 528 F. App'x 323 (4th Cir. 2013) (finding no flagrancy where officers conducted warrantless GPS search before the Supreme Court's decision in *United States v. Jones* and determining there was sufficient

9

attenuation between the official misconduct and discovery of evidence). Because the attenuation factors all weigh in favor of suppression here, and especially considering the flagrancy of the official misconduct, we hold that the evidence discovered as a result of the GPS search is fruit of the poisonous tree and should have been suppressed.

Contrary to the government's assertion, our holding in *United States v. Sprinkle*, 106 F.3d 613 (4th Cir. 1997), does not compel a different result. In *Sprinkle*, we held that a defendant was not entitled to suppression of the firearm he used to shoot at police officers, even though the officers had unlawfully stopped him without reasonable suspicion. 106 F.3d at 619. Our decision in *Sprinkle* is readily distinguishable from the case before us here.

First, unlike the officers in *Sprinkle*, who happened upon the defendant in the course of their neighborhood patrol and decided to conduct an investigative stop, *see id.* at 616, the agents here sought out and followed the Kia using the illegally placed GPS tracker. Indeed, Corporal Johnson testified that he could not have observed the traffic violation or initiated the traffic stop but for the GPS data. Second, unlike the minor speeding violation observed by the agents here and confirmed by the GPS tracker, the shooting in *Sprinkle* was "entirely unconnected" with the illegal stop. *See Strieff*, 136 S. Ct. at 2062 (finding an outstanding warrant to constitute an intervening circumstance because it was "entirely unconnected" with the illegal stop and predated the officer's investigation). Here, the traffic violation was not "entirely unconnected" with the illegal GPS search. In fact, the speeding violation was confirmed by—and intimately tied to—

10

the illegal GPS search. Third, we expressed concern in *Sprinkle* that the defendant would have avoided the consequences of the serious intervening criminal activity if the weapon had been suppressed. *See* 106 F.3d at 619. Here, there is no indication in the record that the consequences of the speeding infraction would have been avoided were the methamphetamine to be suppressed. Thus, the policy concerns animating our decision in *Sprinkle* simply are not present here.

Finally, contrary to the government's position, our decision in *Sprinkle* did not and could not establish a bright-line rule that *any* illegal conduct by a defendant will inevitably attenuate the taint of a Fourth Amendment violation. It is true that a suspect's commission of a new, distinct crime as serious as striking a law enforcement officer, aiming a gun at police, or shooting a firearm will virtually always constitute a severe intervening circumstance that breaks the causal chain. *See id.* at 619, 619 n.4. But as the Supreme Court's fact-intensive analysis in *Strieff* demonstrates, a proper attenuation analysis requires a case-specific balancing of the circumstances in light of the objectives of the exclusionary rule. We therefore reject the Government's attempt to ossify *Sprinkle* into an inflexible maxim.

The attenuation exception to the exclusionary rule applies when the nexus between the government's illegal conduct and the evidence is so weak that the taint of the illegality is dissipated. *Segura v. United States*, 468 U.S. 796, 805 (1984). Because the nexus between the agents' illegal conduct and the evidence is strong, and considering the flagrancy of the constitutional violation in this case, we find that the discovery of the

11

evidence seized during the traffic stop was not sufficiently attenuated from the unlawful GPS search such that the taint of that unlawful search was purged. Thus, the evidence is fruit of the poisonous tree and should have been suppressed.[*] To hold otherwise would allow the government to disregard a constitutional requirement simply by using an illegal GPS search long enough to observe a minor traffic violation. Such a holding would entirely undermine the very purpose of the exclusionary rule: to deter police misconduct.

## IV.

For the foregoing reasons, we reverse the district court's denial of Terry's suppression motion and vacate his conviction.

*REVERSED, VACATED, AND REMANDED*

---

[*] Because we hold that the methamphetamine should have been suppressed and vacate Terry's conviction on this ground, we need not address his remaining arguments as to the superseding indictment and his sentence.